## DUNNING ET UX. *v.* VANDUSEN ET AL.

WILL.—*Construction of.*—*Power.*—A testator devised all his property to his wife, the interest given being described as follows : "All my real estate and personal property, to settle all debts, and expenses, and claims, collect all debts; to have and to hold her life, and to dispose of at her death at her pleasure."

*Held,* that the will gave to the devisee an estate for life only, with a power of disposition of the fee.

SAME.—Whether such power of disposition could be executed by deed, or whether it must be by will, not decided; but,

*Held,* that an ordinary warranty deed, in fee simple, executed by the devisee, which made no reference to the will by which the power of disposition was given, and contained no evidence of an intention to execute the power, conveyed only the life estate of the devisee.

SAME.—The circumstance that the will charged the payment of debts on the devisee did not enlarge the life estate to a fee simple.

From the Ohio Circuit Court.

*J. A. Works* and *J. D. Works,* for appellants.

*W. R. Johnston, H. A. Downey,* and *G. W. Mendell,* for appellees.

WORDEN, J.—This was an action by Lucy J. Vandusen and Conrad, her husband, and John Craig, against James Dunning and Nancy, his wife, to recover certain real estate.

There were four paragraphs in the complaint, but they were all finally withdrawn, except the first, to which a demurrer was filed by the defendants, for want of sufficient facts; but it was overruled, and exception taken. Final judgment was rendered for the plaintiffs.

The only error assigned is based upon the ruling of the court in overruling the demurrer.

The following is the case made by the first paragraph of the complaint :

Robert Craig died seized of the lands in controversy. He left the following will, viz. :

"STATE OF INDIANA, SWITZERLAND COUNTY, August 26th, 1866.

"The last will and testament of Robert Craig: I give and bequeath unto my wife, Mary Craig, all my real estate and personal property, to settle all debts and expenses and claims, collect all debts; to have and to hold her life, and to dispose of it at her death at her pleasure. As witness my hand and seal, this 26th day of August, 1866.

"ROBERT CRAIG. [Seal.]

"Witness," etc.

This will, after the decease of the testator, was duly admitted to probate, and the widow, Mary Craig, she having survived her husband, elected to take under the will. After the death of the testator, viz., on the 15th of May, 1868, Mary Craig executed to James Dunning an ordinary statutory warranty deed for a tract of a little over forty acres of the land in controversy, for the expressed consideration of five hundred dollars ; and on the 14th of January, 1869, she executed a like deed to Nancy Dunning for a little over thirty acres of the land, for the expressed consideration of two hundred and seventy dollars. In neither of these deeds is any reference made to the will of Robert Craig, or the power contained therein, or the source from which the said Mary derived her title.

The grantees of these deeds have possession of the land granted them.

Mary Craig died in 1871, and before the commencement

of this suit. The plaintiffs are the only heirs at law of Robert Craig, and as such claim the land in controversy.

If the will only gave Mary Craig a life estate, with a power of alienating the fee, and the power has not been executed, the plaintiffs were doubtless entitled to recover, as the reversion would descend to them from Robert Craig. It is, however, contended by counsel for appellants, that by the terms of the will the fee vested in the widow, Mary Craig. If so, there can be no further question in the case, and the appellants are entitled to the land. But we are of a different opinion in respect to the will. It seems to us to be pretty clear from the terms of the will, that the testator intended that his widow should take a life estate only, with a power of disposition of the fee at her death. The language is, "to have and to hold her life, and to dispose of it at her death at her pleasure." There is an omission of a word which may be supplied without altering in the least the sense, and then the sentence will read, "to have and to hold during her life, and to dispose of it at her death at her pleasure." Here is an express limitation of the estate devised to the life of the devisee. The case is much like that of *Fraizer* v. *Hassey*, 43 Ind. 310, where the will of the testator gave his wife certain real estate "during her natural life to her, and dispose of the same as she may think best for the interest and comfort of herself and my children." It was held, that the devisee took only a life estate.

There are numerous authorities which make it clear, that the devisee, Mary Craig, took only a life estate under the will. An old case is that of *Lief* v. *Saltingstone*, 1 Mod. 189. There the will contained the following clause: "Item. For Rees-Farm (in such a place), I will and bequeath it to my wife, during her natural life; and by her to be disposed of to such of my children as she shall think fit." It was held, "that the wife took by the will an estate for her own life, with a power to dispose of the fee. She cannot take a larger estate to herself by implication than an estate for life; because an estate for life is given to her by express limitation."

The case of *Tomlinson* v. *Dighton*, 1 Peere Wms. 149, S. C., 1 Salk. 239, is much in point. There the devise was to the wife of the testator for life, and then to be at her disposal, provided it be to any of his children, if living, if not, to any of his kindred that his wife shall please. It was held, that the wife took an estate for life, with a power of disposing of the inheritance.

· Coming down about a century later, we find the case of *Doe* v. *Thorley*, 10 East, 438. In this case the testator devised to his wife " all his personal estate, and likewise all his freehold estate, during her natural life, and also at her disposal afterward, to leave it to whomsoever she pleased." This was held to confer only a life estate upon the devisee, with a power of disposition of the fee ; and it was also held, that the fee could only be disposed of by will. The latter branch of the decision was made to turn upon the word "leave," used in the will, as implying a disposition by will and not by other conveyance. We are now, however, considering what estate the devisee took under the will, and not the time or manner of the execution of the power.

In *Henderson* v. *Vaulx*, 10 Yerg. 30, the testator devised to his wife personal and real property, " during her natural life ;" adding, that " at her death, it is my will and desire she should have the disposal of one-half the property to whomsoever she thinks proper, the other half of my property, both real and personal, to be divided among my brothers and sisters, or their heirs."

It was held, that the wife took only a life estate in any of the property, with a power of disposition at her death of a moiety.

The case of *Denson* v. *Mitchell*, 26 Ala. 360, is clearly in point. There the testator devised to his wife certain property, concluding as follows :   " All of which she is to have and hold during her natural life, and at her death to dispose of at her own will and pleasure." It was held, that she took only a life estate, with authority to dispose of the remainder.

Dunning *et ux. v.* Vandusen *et al.*

We make the following extracts from the opinion of the court in that case: "The authorities, both English and American, seem generally agreed in the position, that an express estate for life, given by will, negatives the intention to give the absolute property, and converts words conferring a right of disposition into words of mere power.   *   *   * Their effect is not, therefore, to enlarge by implication the previous estate; but, upon the death of the life tenant, and in default of appointment, a *quasi* reversion results to the representatives of the testator, or it falls into the residuum, according as the will may direct."

A passage from Kent will close our citations of authorities upon this point :

"A devise of an estate generally, or indefinitely, with a power of disposition over it, carries a fee.   But where the estate is given for life only, the devisee takes only an estate for life, though a power of disposition, or to appoint the fee by deed or will, be annexed ; unless there should be some manifest general intent of the testator, which would be defeated by adhering to this particular intent."   4 Kent Com. 319.

In the will before us, there is nothing to show any general intent on the part of the testator, that the devisee should take more than a life estate, or that controls the express limitation of the estate to her for life.

The counsel for the appellants assume the position, that "where real estate is devised to the wife during her natural life, with power to dispose of the same as she sees proper, she takes a fee simple," and to this proposition they cite the cases of *Waring* v. *Waring*, 17 Barb. 552; *Lillard* v. *Robinson*, 3 Litt. 415 ; *Jarrot* v. *Vaughn*, 2 Gilman, 132. We have examined these cases, and are clearly of the opinion that neither one of them sustains the proposition.   In the case in Barbour, a husband devised to his wife certain property for life.   He afterward executed a codicil by which he empowered her to sell the same property.   But the testator

survived the wife.   Hence, the question here involved did not and could not arise.

In the case in Gilman, the material clause in the will reads as follows: "I name for my executrix testamentary the person of Julie Beauvais, my wife, to whom I give the enjoyment of all my property, as well real as personal, that I may have after my death, and at the moment of my dying, for her to enjoy peaceably during her life." There was a subsequent clause in the will that empowered her to sell such of the property as she thought proper, if she did not derive sufficient from the revenue of the property to enable her to live with independence.   It was decided, that she took only a life estate, with a power to dispose of the reversion, if necessary for the purpose specified.

This case is in entire harmony with the conclusion at which we have arrived.   The same may be said of the case in Littell.   The terms of the will in that case were : "I lend all my estate, of all kind, to my wife during her natural life ; and I give all the said estate to be divided equally between the children of Thomas Prather, deceased, at his death, unless my said wife shall order it to the contrary." It was held, that the wife took a life estate only, and that the words "unless my said wife shall order it to the contrary" gave her a power to dispose of the fee.

The counsel for the appellants assume another position, viz., that "a devise of an estate generally, with a power to convey the same, creates a fee." This proposition may be conceded.   It is in accordance with the paragraph above quoted from Kent, and, we believe, with the general current of authorities.   But it has no application to the case here. Here there is not a devise generally, but the estate is expressly limited to the life of the devisee.

The appellants also urge, that "where words of inheritance are not used, but a charge is fastened upon the estate and the person of the devisee, as the payment of debts, it raises it to a fee."

This proposition has reference to the clause in the will by

which the devisee is required "to settle all debts and expenses and claims.

In 2 Jarman on Wills, 171, the law on this subject is stated as follows : "It has been long settled that where a devisee, whose estate is undefined, is directed to pay the testator's debts or legacies, or a specific sum in gross, he takes an estate in fee, on the ground that if he took an estate for life only, he might be damnified by the determination of his interest before reimbursement of his expenditure. * * * The rule under consideration, however, is confined to indefinite devises ; for where the direction to pay is imposed on a person to whom there is given an express estate for life, or an estate tail (whether limited in express terms, or arising constructively by implication from words introducing the devise over), the charge is inoperative to enlarge such estate for life or estate tail, to a fee simple." See, also, upon this point, *Tanner* v. *Livingston,* 12 Wend. 83, *Fox* v. *Phelps,* 17 Wend. 393, and *Tator* v. *Tator,* 4 Barb. 431. Here the estate of the devisee is expressly limited to the term of her life, and cannot be enlarged to a fee by the charge imposed upon her.

We now proceed to inquire whether the power created by the will has been validly executed.

It is claimed by the counsel for the appellees, that the language of the will is such as to limit the time of the execution of the power to the period of the death of Mary Craig, and hence, that it could only be executed by will. Doubtless a general power to dispose of real estate, no particular mode of execution being provided for, may be executed either by deed or will. Perhaps if Mary Craig could not execute the power until the time of her death, it could only be executed by will ; but the question is one regarding the time more than the manner of the execution of the power. If she could not execute the power until the period of her death, and if, therefore, no instrument but a will could be made effectual for that purpose, it follows that the power must have been executed by will or not at all.

The will, as we have seen, gives Mary Craig an estate for life, "to dispose of it at her death at her pleasure." This language is, perhaps, susceptible of two constructions: First, as authorizing the devisee at any time to dispose of the reversion, her life estate being carved out of the property, which reversion or estate so to be disposed of was to commence "at her death;" or, second, as authorizing her "at her death" to dispose of the reversion. In other words, the terms "at her death" have reference to the time of the commencement of the estate to be disposed of under the power, or they have reference to the time when the disposition may be made.

If the former construction is to prevail, then Mary Craig could at once, upon the death of the testator, have disposed of the entire property, and invested the purchaser with the fee simple, by the conveyance of her life estate and the execution of the power to dispose of the reversion. Both these purposes could doubtless be effected by the same instrument, sufficient language being used to show a purpose and intent to execute the power. Or she might convey her life estate to one, and by a proper execution of the power, vest the reversion in another, inasmuch as by statute freehold estates may be created to commence at a future day. 1 G. & H. 266, sec. 37. With this construction, the devisee, immediately upon the death of the testator, had, including her life estate and the beneficial power of disposition of the reversion, an interest equivalent to a fee simple for all the purposes of alienation. To be sure, if she did not execute the power, the reversion would descend to the heirs of the testator, but she might in her lifetime have disposed of the entire estate.

The latter interpretation, viz., that the words "at her death" have reference to the time when the disposition might be made, seems to us to be the true one, and the one that most certainly reflects the real intention of the testator. But on this point we make no decision, inasmuch as we have concluded that the power was not well executed on grounds

hereinafter stated.   It may be remarked, before leaving this point, that it would seem that if the power was to be executed at the death of the devisee, it could not have been executed before that time.   "It is the general rule," says Chancellor Kent, " that a power cannot be exercised before the time in which it was the intention of the grantor of the power that it should be exercised."   4 Kent Com. 334.

The following authorities bear more or less upon the point above stated:   *Tomlinson* v. *Dighton, supra; Coxe* v. *Day,* 13 East, 118 ; *Gast* v. *Porter,* 13 Penn. St. 533 ; *Fairman* v. *Beal,* 14 Ill. 244 ; *Christy* v. *Pulliam,* 17 Ill. 59 ; S. C., 19 Ill. 331 ; 1 Sugden Powers, 3 Am. ed., side p. 334.

We think it clear, whether Mary Craig could have executed the power in her lifetime or otherwise, that the deeds executed by her, respectively, to James and Nancy Dunning, cannot be regarded as such execution.   They were, as we have seen, simple conveyances in the statutory form, by which the grantor for the consideration named conveyed and warranted the land to the grantees respectively.   There is no allusion in them to the will, nor is there any circumstance tending to show an intention to execute the power.   She had a life estate which she could convey, and upon which her deeds could operate.   The deeds executed by her speak only the language of ordinary conveyances, and there is nothing in them from which it can be inferred that she intended to do more than convey the estate which was vested, or which she supposed was vested in her.   She doubtless supposed that the fee was vested in her, and executed the conveyances, with a warranty, but the language of her conveyances implies that she intended to convey only what she supposed was her own, and not that she intended to execute the power contained in the will, by which she was authorized to vest in the purchasers a title which hitherto had been in others.

This case differs from that of *Fraizer* v. *Hassey, supra,* as here there were warranties in the deeds.   But the circumstance that the deeds here contain warranties cannot be

regarded as showing an intent to execute the power. It rather shows that the grantor supposed she owned the fee, and was willing to warrant her supposed title. Here the deeds executed by Mary Craig can attach to the estate vested in her; and that being the case, and there being no intention shown to execute the power, they cannot be deemed as such execution.

We quote the following passages from Chancellor Kent on this subject: "The power may be executed without reciting it, or even referring to it, provided the act shows that the donee had in view the subject of the power. In the case of wills, it has been repeatedly declared, and is now the settled rule, that in respect to the execution of a power, there must be a reference to the subject of it, or to the power itself; unless it be in a case in which the will would be inoperative, without the aid of the power, and the intention to execute the power became clear and manifest. The general rule of construction, both as to deeds and wills, is, that if there be an interest and a power existing together in the same person, over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest, and not to the power. If there be any legal interest on which the deed can attach, it will not execute a power. If an act will work two ways, the one by an interest and the other by a power, and the act be indifferent, the law will attribute it to the interest and not to the authority. * * * The intent must be so clear that no other reasonable intent can be imputed to the will; and if the will does not refer to the power, or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then, unless the intent to execute the power be clearly expressed, it is no execution of it." 4 Kent Com. 334, 335.

Turning to some of the adjudged cases on the subject, that of *Denn* v. *Roake*, 5 B. & C. 720, is found to be much in point. There A. B. was seized in fee of one moiety of certain premises in the county of S., and tenant for life, with

power of appointment by deed or will, of the other moiety. She made a will, devising as follows : " I give and devise all my freehold estates in L. and county of S., or elsewhere, to my nephew," etc. It was held, that the devise did not operate as an execution of the power, and passed that moiety only of which the testator was seized in fee. ABBOTT, C. J., in delivering the opinion of the court, said : " The rule or principle of decision applicable to this case has its origin in the case of *Sir E. Clere*, 6 Co. 17. The best exposition of it seems to be that given by Lord Chief Justice HOBART in the *Commendam* case, Hob. 159, 160, ' If an act will work two ways, the one by an interest, the other by an authority or power, and the act be indifferent, the law will attribute it to the interest, and not to the authority; and so you must take it, for *fictio cedit veritati.* \* \* Where an interest and authority meet, if the party declare clearly that his will is that this act shall take effect by his authority or power, there it shall prevail against the interest; for *modus et conventio vincunt legem.* \* \* Nay more, though the party do not make an express declaration, yet if his act do import a necessity to work by his power, or else to be wholly void, the benignity of the law will give way to effect the meaning of the party.' \* \* In the case now before the court the testatrix has not referred to her power, and she had lands in the county of Surrey, upon which the will may work by her interest, viz.; the other moiety of the tenements in question ; and therefore if there were nothing more in the case, it seems very clear that the law could not attribute the will to the power, nor infer that she intended to execute the power."

The case of *Blagge* v. *Miles*, 1 Story, 426, may be regarded as the leading American case on the subject. In this case, about all the authorities on the point seem to be collected. Mr. Justice STORY, in speaking of *Sir Edward Clere's Case* (p. 449), said, it " is not only unquestionable law, and has so been always held; but it affords a strong illus-

tration of the true doctrine. In that case, it was held, that the power was well executed, notwithstanding it was not referred to, because otherwise the devise in the will would be inoperative and void. The testator had no estate in the property devised, but only a power over it; and so, *ut res magis valeat, quam pereat,* it was held, that he intended to execute the power." He further says, that there is no objection to the doctrine of Lord Chief Justice HOBART, as stated in the *Commendam Case.* He says, it " proceeds upon the plain ground, that there is nothing in the will, which shows any intention to execute the power; and in cases of doubt the court cannot deem it a good execution of the power."

In *Jones* v. *Wood,* 16 Penn. St. 25, 42, the court hold, that "when the donee of a power to sell land possesses, also, an interest in the subject of the power, a conveyance by him, without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it, or, at least, in the face of evidence disproving such intention; but where the donee has no estate in the premises, and his conveyance can only be made operative by treating it as an exertion of the power to sell, it will be so considered."

In I Sug. Powers, side p. 232, it is said: " It will be collected from the precedent in a preceding page, first, that the deed executing the power should be expressed to be in exercise of it; secondly, of every other authority enabling the donee in that behalf; and, thirdly, that it should be shown in the body of the deed that the formalities required to the execution of the power are complied with. Every well drawn deed of appointment embraces these three points; the first clearly evinces the intention of the person executing the power, which is particularly necessary where he has an interest as well as a power," etc.

It may be observed, that the case before cited from 14 Ill., which is in some respects like the one in judgment, is distinguishable from it in this, that in that case the deed which

was held to execute the power, contained a reference to the will creating the power.

We are of opinion that the deeds of Mary Craig did not execute the power vested in her by the will, and hence that the judgment below must be affirmed.

The judgment below is affirmed, with costs.