No. 9202.

## CLARK ET AL. *v.* MIDDLESWORTH ET AL.

WILL.—*Construction.— Widow.—Election.—Estate for Life.—Conveyance.*—The testator devised to his wife " all my property, real and personal, during her life, and at her death, if anything should remain, the same to be divided among my heirs at law." He left surviving him his wife and children and grandchildren. The wife afterwards executed a deed of conveyance of the whole of the real estate, for an adequate price, with covenant that she was lawfully seized of the same in fee simple.

*Held,* that the wife took an estate for life with power to sell and convey the whole estate in fee.

*Held,* also, that the execution of the deed by her was an election to take

under the will, and not under the law giving her only a third in fee, and was such an execution of the power to convey as to vest in the purchaser the whole estate in fee.

TENANT FOR LIFE.—*Remainder-Man.—Taxes.—Burden of Proof.*—A tenant for life is required to preserve the remainder by paying taxes and incumbrances, if the income of the estate is sufficient therefor; but, in a suit by the remainder-man against the tenant for life for failure of the latter in that respect, the burden of proof to show that the income of the estate was sufficient is on the plaintiff.

From the Elkhart Circuit Court.

*J. M. Vanfleet, A. S. York, D. York* and *L. W. Vail,* for appellants.

*R. M. Johnson* and *E. G. Herr,* for appellees.

MORRIS, C.—The appellants brought this suit against the appellees to recover the value of a lot in the town of Goshen, in Elkhart county. The cause was put at issue and submitted to the court for trial. At the request of the parties, the court found the facts specially, and stated the conclusions of law thereon. The appellants properly excepted to the conclusions of law as stated by the court. The error assigned involves the correctness of the conclusions of law stated by the court below.

The findings of fact and conclusions of law are as follows: "The court finds, that in the year A. D. 1854, Aaron B. Clark died testate, being at the time the owner in fee, and in possession, of lot No. 124, in Goshen, in the county of Elkhart and State of Indiana; that the will of said decedent, a copy of which is attached to and made a part of this finding, was duly probated in this county, and is as follows:

"'I, Aaron B. Clark, being of sound mind and memory, do make and publish this as my last will and testament, hereby revoking all former wills.' I hereby will and bequeath and devise all my property, real and personal, to my wife, Mary A. Clark, during her life, and, at her death, should anything remain, the same to be divided among my heirs at law. I hereby appoint my said wife the executrix of this my last will.

"'Given under my hand and seal, this 2d day of May, A. D. 1854.    A. B. CLARK. [Seal.]'

"That said testator left surviving him his widow, Mary A. Clark, and children and grandchildren, who are named as plaintiffs in this case; that, on the 18th day of November, 1863, said Mary A. Clark executed to one John Arthur, a conveyance of said real estate, a copy of which is made a part hereof, and is as follows:

"'This indenture witnesseth that Mary A. Clark, of St. Joseph county, Indiana, in consideration of $1,400 to her paid by John Arthur, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell and convey to the said John Arthur, heirs and assigns forever, the following real estate in Elkhart county, and State of Indiana, and described as follows, to wit:    Lot one hundred and twenty-four (124) in the original plat of the town of Goshen, in said county and State, together with all the privileges and appurtenances to the same belonging, to have and to hold the same, to the said John Arthur, heirs and assigns forever.    The grantor, heirs and assigns hereby covenanting with the grantee, heirs and assigns, that the title so conveyed is clear, free and unencumbered; that she is lawfully seized of the premises aforesaid, as of a sure, perfect and indefeasible estate of inheritance in fee simple; and that she will warrant and defend the same against all claims whatsoever.

"'In witness whereof, the said Mary A. Clark has hereunto set her hand and seal this 18th day of November, 1863.

"'MARY A. CLARK. [Seal.]'

"That, on April 26th, 1864, said Arthur conveyed the undivided one-half of said lot to Henry L. Bailey; that said Bailey, on November 28th, 1864, conveyed undivided half of said lot to James Upson; that, on September 5th, 1865, said Arthur conveyed the other undivided half of said lot to James Upson; that, April 26th, 1866, said Upson conveyed said lot to David M. Shoup; that, on December 1st, 1866, said Shoup conveyed the said undivided one-half of said lot

to Helen A. Ward, who, February 1st, 1867, joined her husband in conveying the same to John Bigler, who, on January 13th, 1868, conveyed the same to Thomas Smurr, who, on September 15th, 1869, conveyed the same to Marcus M. Barber; that, on June 12th, 1870, the sheriff of Elkhart county, Indiana, in consummation of a sale made upon an execution against said Shoup and Smurr, conveyed the undivided one-half of said lot to Daniel Hill, and, on June 20th, 1870, in consummation of a sale duly made on an execution against said Smurr and said Barber, said sheriff conveyed said lot to said Daniel Hill, whereby said Hill became and was possessed of all the title and interest conveyed by the said deed of Mary A. Clark to said John Arthur; that, on August 11th, 1871, said Hill conveyed said lot to the defendant Isaac M. Middlesworth, said conveyance being made subject to the taxes of the year 1871; that said Middlesworth went into actual possession in September, 1871, and occupied said lot until May 22d, 1872, when he conveyed to Truman Hunt, subject to the taxes of 1872; that, on November 16th, 1874, in consummation of a sale upon execution against said Middlesworth and one Abner L. Brown, said sheriff conveyed said lot to said Truman Hunt, who, on August 9th, 1876, quitclaimed the same to Seth Hunt.

" In 1871, one undivided half of said lot stood·upon the tax duplicate in the name of Joseph D. Arnold, who had purchased the same at a tax sale for the taxes of 1869 and 1870, the same having been assessed in the name of David M. Shoup for those years; and the tax thereon for the years 1871 and 1872, the same being assessed in the name of said Arnold, not having been paid, the same was again sold at tax sale for said taxes, to wit, February 10th, 1873, and the certificate of said sale was duly assigned by the purchaser to Jonathan R. Mather, and thereafter said half of said lot was assessed to and stood for taxation in the name of said Mather. In the years 1873 and 1874, the other half of said lot was assessed and taxed in the name of Daniel Hill, and, the taxes for said years having

become delinquent, the same was sold February 8th, 1875, to said Jonathan R. Mather, and thereafter assessed and taxed in his name; and thereafter, in due time, there having been no redemption from said sales, the county auditor executed a tax deed to said Mather, in consummation of said sales; and thereafter, to wit, at the September term of this court for the year 1877, said Mather instituted a suit to quiet his title under said deeds, and made parties defendants thereto the said Mary A. Clark and the parties to this suit, both plaintiffs and defendants, and caused them all to be duly served with process or publication of notice, and, upon final hearing, to wit, on the 28th day of March, 1878, the court adjudged that the said deeds were invalid as conveyances, but found and adjudged that there was due said Mather the sum of $229.05, which was declared a lien upon said lot, and it was duly adjudged and decreed that the said lot be sold for the payment of said lien and costs; that the said Mary A. Clark died April 30th, 1878; that, on June 12th, 1878, the said Mather procured an order of sale to be issued on said decree, by virtue of which the sheriff of said county duly advertised and sold said lot on July 6th, 1878, to said Mather, for the sum of $166.49, and, there having been no redemption from said sale, did, on July 7th, 1879, execute to said purchaser a conveyance of said lot. Said lot was, at the time it was so sold and conveyed to said Mather, of the value of $1,500.

"On June the 7th, 1876, said Middlesworth recovered a judgment at law in the Elkhart Circuit Court against said Truman Hunt for $2,000, on which execution was duly issued and levied upon said lot, and by virtue thereof a sale of said lot made to said Middlesworth, and the said Middlesworth having assigned a one-fourth interest in his certificate of purchase to the defendants Johnson, Osborn and Herr, who were partners under the firm name of Johnson, Osborn & Herr, the sheriff at the end of the year for redemption, to wit, on the 26th day of November, 1877, executed to said Middlesworth a deed for the undivided three-fourths of said

lot, and on the 25th day of February, 1878, to said Johnson, Osborn & Herr, a deed for the undivided one-fourth thereof; and from the dates of their said deeds respectively, until July 7th, 1879, when the sheriff conveyed to said Mather, said Middlesworth, and Johnson, Osborn & Herr had the possession and control under their said deeds of said lot, but derived no rents exceeding $10 therefrom. The deeds of conveyance hereinbefore mentioned were all duly recorded and, except as otherwise expressly shown, were warranty deeds, made in the statutory short form. Said Middlesworth paid the taxes on one-half of said lot for the year 1871, and offered to pay and tendered to the treasurer of said county the taxes assessed against the other half of the lot for that year, but the same was refused by the said officer on the ground that the same had prior thereto been sold for taxes theretofore assessed against the same, and was then assessed for taxation in the name of the purchaser of said tax sale.

## "Conclusions of Law.

" 1st. Upon the foregoing facts the court finds that the defendants, jointly or severally, are not liable to the plaintiffs for the value of said lot, so sold and conveyed to said Mather upon said decree and order of court.

" 2d. The plaintiffs can recover nothing by this suit."

Some of the appellants were the children and others the grandchildren of the testator, Aaron B. Clark. They claim that the finding of the court shows that the widow of said testator, Mary A. Clark, elected to take under his will, and that by its terms she took but a life-estate in his property, without any power of disposition, and that they, as devisees or heirs took the remainder in fee. They further insist that if the will of Aaron B. Clark gave to Mary A. Clark a life-estate in the real property of the testator, with a power of alienation, the power was never executed by her as to the lot in question. They also claim that it was the duty of the said Mary A. Clark, as tenant for life of said lot, and those

who, from time to time, succeeded to her estate, to pay and keep down all taxes and charges upon said lot during her life, and that if said lot has been lost to them through a failure on their part to discharge this duty, the tenants for life are liable to them, as remainder-men, for the value of the lot; that the said Mary A. Clark and the appellees, who became owners of her life-estate, failed during the continuance of said life-estate to pay the taxes lawfully assessed on said lot, in consequence of which the same was sold for taxes and lost to the appellants.

It is insisted, on the other hand, that the facts found do not show that Mary A. Clark ever elected to take under the will of Aaron B..Clark; that she never did so elect, but took one-third of the lot under the law as his widow; that she was not, therefore, in any way bound to pay the taxes on the two-thirds of the lot which went by descent to the appellants. But they further contend that if Mrs. Clark did elect to take under the will, she took a life-estate coupled with a power of alienation,.and that her warranty deed conveying said lot to John Arthur was a valid execution of the power. The appellees also contend that if the above positions are not tenable, the judgment below was right, for the reason that the tenants for life are not found to have received any income from the lot with which to pay the taxes thereon, and for this reason the facts found furnish no sufficient data upon which any judgment for damages can rest.

We will consider the points contested in the order above stated.

We think it quite clear that the will of A. B. Clark gave to his widow, Mary· A. Clark, a life-estate in said lot, and that it also gave her, by the clearest implication, a power to dispose of the same. The words, "and at her death, should anything remain," are senseless and without meaning, unless the testator intended that the tenant for life might, prior to her death, dispose of the property devised to her for life. The words clearly show that he must have contemplated this at the

time, and, therefore, have intended it. *Paine* v. *Barnes*, 100 Mass. 470; *Andrews* v. *Bank of Cape Ann*, 3 Allen, 313.

The appellants insist that the above words do not confer upon the tenant for life a power to convey, and refer us to the case of *Blanchard* v. *Blanchard*, 1 Allen, 223. The words, in the case referred to, from which the power to sell and convey was attempted to be inferred, were, " all the property * that may be left at the death of my wife," etc. The court held that the words meant the property left after the life-estate given to the wife had terminated. But as, by the will, personal as well as real estate had been given to the wife for life, the court was inclined to admit that the words might imply a power to dispose of the personal, but not of the real estate. No such construction can be given to the words, " should anything remain," found in the will of Aaron B. Clark.✓ .

Do the facts found by the court show that Mary A. Clark elected to take under the will of her husband, Aaron B. Clark?

The court finds that Aaron B. Clark died testate, the owner in fee of the lot, the value of which is in controversy; that he gave it by his will to said Mary A. Clark for life, with power to dispose of the fee. It is further found by the court, that on the 18th day of Nov., 1863, Martha A. Clark sold, and by warranty deed conveyed, said lot to John Arthur for $1,400, covenanting that she was lawfully seized of the same as of a sure, perfect and indefeasible estate of inheritance in fee simple. Obviously, Mrs. Clark intended to convey the whole lot in fee, not one-third of it. She doubtless believed that under the will she had become the owner of the fee, and not the owner of a mere power to dispose of the fee. She knew that she had no right to more than one-third of the lot, if she took under the law and not under the will. This conveyance, if made under the will, was a positive, irrevocable election, in view of the facts found by the court, to take under the will. We think she clearly intended to convey the estate which she supposed had been devised to her by Aaron B. Clark. The

following cases, cited by the appellants' counsel, bear upon the question : *Bradfords* v. *Kents,* 43 Pa. St. 474 ; *Cox* v. *Rogers,* 77 Pa. St. 160 ; *Tilton* v. *Nelson,* 27 Barb. 595.

We have examined the cases referred to by counsel for the appellees, and think they are not in conflict with the conclusion reached.   The case of *Wetherill* v. *Harris,* 67 Ind. 452, is unlike this.   The court, after stating that unless the widow is shown to have elected to take under the will by some positive, affirmative act, indicating her intention to elect, she will be presumed to hold under the law, says :   " Having made the mortgage as executrix, it can not be held that Mrs. Hensey is bound personally." She acted as executrix, and what she did as executrix would not constitute an election.

Did the warranty deed executed by Mrs. Clark to John Arthur convey the fee in the lot devised to her?   Can this deed operate as a valid execution of the power devised to Mrs. Clark ?   Upon this point the authorities are not quite agreed.

The case of *White* v. *Hicks,* 33 N. Y. 383, and cases there cited, would seem to favor the views of the appellees, that the execution of the deed by Mrs. Clark to Arthur might operate as a valid execution of the power, so as to vest in Arthur the title to the lot in fee.   On the other hand, in the case of *Dunning* v. *Vandusen,* 47 Ind. 423 (17 Am. R. 709), and the cases there cited, it is held that such a deed does not, of itself, indicate any intention on the part of the grantor to execute the power.   On the one side, it may be urged that the whole title to the lot was intended to be transferred ; that this could only be done by executing the power, and hence it may be inferred that the grantor intended, by the execution of the deed, to execute the power.   But it may be said, with much more force, as it is in the case last cited, that the deed indicates an intention on the part of the grantor to convey her title, and nothing else ; that, by the language of her covenants, she affirms that she " is lawfully seized of a sure and perfect title," etc., which clearly evinces an intention to transfer her own title, and not an intention to dispose of the estate of another.

Mrs. Clark believed, at the time she made the deed, that the lot belonged to her; and it was her interest in it, and not the interests of others, which she intended to convey. We are disposed to adhere to the rule as held in the case of *Dunning* v. *Vandusen*. Counsel for the appellee insist that, as in the case just cited the tenant for life was authorized to dispose of the fee at her death only, that case is unlike the present, and that; for this reason, the rule should be different. But the question, as to whether the power has been executed, did not depend upon the time at which the acts, claimed to constitute the execution, were performed. The decision did not turn upon or involve a question of time. In addition to the cases cited in *Dunning* v. *Vandusen,* we refer to *Bingham's Appeal,* 64 Pa. St. 345; *Pease* v. *Pilot Knob Iron Co.,* 49 Mo. 124.

Assuming that it was the duty of Mary A. Clark, as tenant for life, and of those who, from time to time, succeeded to her interest in the lot, to pay and keep down the taxes on the same, what is the measure of the liability of the tenant for life who neglects to discharge this duty to those in remainder? It would seem that such liability should be measured by the loss and injury resulting from the failure of the tenant to the remainder-man. The tenant for life owes it to the remainder-man to keep down the taxes, and if, through his failure to perform this duty, the estate in remainder is sold, destroyed or wasted, why may he not be required to make the loss good? If, through the failure of the tenant to pay the taxes, if the income of the estate is sufficient to discharge them, the estate is sold and conveyed to another beyond the power of the remainder-man to recover it, it is, as to him, destroyed, wasted and the inheritance gone, and the tenant should pay for the lot.

In the case of *Wade* v. *Malloy,* 16 Hun, 226, it was held that where a tenant for life failed to pay taxes and to keep down the interest on an existing encumbrance, in consequence of which the estate was sold, the tenant in default

was liable to those in remainder for the loss sustained. The court says :

"One thing is certain, the defendant by his neglect has caused the disherison of the plaintiff. True, he has not done so by any of the acts or omissions usually named in the books as instances of waste. But is that important? Is it material by what act or omission the destruction of the inheritance is brought about? The result is what causes the injury and damage, and not the mode or manner of its accomplishment. The defendant has been guilty of a great wrong towards the plaintiff, much akin to permissive waste, and the result has been the entire loss of her interest in the property. She ought to have a remedy." The above is the only case that we have been able to find bearing directly upon the above question. We think it decides the law.

It appears from the findings of the court, that one-half of said lot was sold in 1873, for the taxes accrued on said lot for 1869 and subsequent years ; that at that time one Hunt owned the life-estate in said lot; that one Jonathan R. Mather became the owner of the certificate of purchase, and, the portion of the lot sold not having been redeemed within two years, Mather obtained from the proper officer a deed for the same. In 1875, said Mather bought at tax sale the other half of said lot for the taxes of 1873 and 1874, and, no redemption having been made within two years, he obtained a deed for the same in 1877.

Mather instituted a suit at the September term, 1877, of the Elkhart Circuit Court, against Mary A. Clark and all the parties to this suit, asking that his title to said lot be quieted. The court, at the March term, 1878, adjudged that Mather's deeds were invalid, but found that there was due him for the taxes paid $229.05, declared the same a lien on the lot and ordered it to be sold to pay the same and costs. On the 6th of July, 1878, the lot was sold upon an order duly issued to enforce Mather's lien, for $166.49, to said Mather, who, at

the expiration of a year, no one having redeemed from said sale, obtained a sheriff's deed for said lot.

Mary A. Clark died April 30th, 1878, at which time the life-estate ceased, and the appellants became the owners in fee of the lot, subject to the lien in favor of Mather.

It does not appear from the findings of the court that the rents and income of the lot were sufficient to pay the ordinary taxes upon the same, nor that the lot was in any way productive. For anything that appears in the findings, it might have been, during the life of Mary A. Clark, entirely unproductive. It is true that the court finds that the rents received by Middlesworth, Johnson, Osborn and Herr, who were in possession of the lot from 1877 until 1879, did not exceed $10; but whether any part of this sum accrued before the death of Mary A. Clark is not found. From the facts found, we can not say that the lot was productive. We can not, by presumption, add to the facts found by the court.

If the lot was entirely unproductive, was it the duty of the tenant for life to improve it and make it sufficiently productive to pay the taxes and charges upon it, or, failing so to do, was she bound, as such tenant, to pay the accruing taxes and charges? We think she was not. She might, it is true, have erected buildings upon the lot, and thereby made it productive, but had she erected buildings, however permanent and beneficial they may have become to those in remainder, she could neither have charged their cost upon the estate nor upon those in remainder. We think she was not bound to improve the lot in order to render it productive. The tenant for life, as well as the remainder-man, must be regarded as the object of the donor's bounty, and to hold her bound to expend money for the protection of the interests of the remainder-man, beyond the income of the property, would be unjust and opposed to the presumed intention of the donor. *Brooks* v. *Brooks*, 12 S. Car. 422.

The court finds that Aaron B. Clark died in possession of said lot. From this, the appellant insists that it must be in-

ferred that Mr. Clark was, at his death, in possession. But both might have been legally in possession of the lot, without actually occupying it. In the case of *Wade* v. *Malloy, supra,* the income of the property was alleged and proven and shown to be sufficient to keep down the interest and taxes. It should have been shown in this case. We think the court did not err in the conclusions of law stated.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of appellants.

WOODS, J., was absent.

## ON PETITION FOR A REHEARING.

MORRIS, C.—Counsel for the appellant insist that the court erred in its opinion in this case, in holding:

1. That the tenant for life was not bound for the payment of taxes on the real estate so held beyond the income of such estate.

2. In holding that in this case the burden of showing that the income of the estate was sufficient to pay the taxes and charges upon it, rested upon the appellants.

Aaron B. Clark, by his will, devised a lot in Goshen, Elkhart county, Indiana, to his wife, Mary A. Clark, for life, with remainder to the appellants. The taxes on the lot were allowed to become delinquent, and it was duly sold for their non-payment, and, through the sale, the title, during the life of Mary A. Clark, passed beyond the reach of the appellants, and became lost to them. The suit is brought to recover from the appellees, as the grantees of Mary A. Clark, the value of the estate in remainder thus lost to the appellants.

We held that the tenant for life, as well as those in remainder, must be regarded as the object of the testator's bounty; that, if the property was unproductive, she was not bound to pay out of her other means the accruing taxes and charges upon the estate in order to save the remainder for the appellants; that such a requirement would be opposed to the presumed intention of the testator.

1st. The appellants say that the taxes on the estate are charged by the State to the tenant for life, and that the tenant is, therefore, under obligation to pay them. This may be, but if the State sold the lot, and from the proceeds received the taxes, the obligation to the State is discharged. The question is not between the State and the tenant for life, but between the latter and the remainder-man. In such case, if the remainder-man desires to save the estate, he must pay the taxes. We are satisfied with our ruling on this point.

2d. Was it for the appellants in this case to show that the property was sufficiently productive to keep down and pay the taxes, and that therefore the property was wrongfully allowed to be sold, and the remainder lost to them? or was it for the appellees to show that the property was not productive, and that for that reason they were excusable?

Appellants insist that, *prima facie,* it is the duty of the tenant for life to pay the taxes. But we hold that the duty is not absolute, but conditional; that it is dependent upon the productive capacity of the estate; that if the property is unproductive, the duty does not exist; that, therefore, the remainder-man can not complain of the failure of the tenant for life to pay the taxes, without showing that the estate was productive, and that, for this reason, the burden as to this question was upon the appellants. The appellants say:

" We think it is a universal rule of law, without exception, that where one person sues another for failing to perform a duty imposed by law or by contract, and the plaintiff proves the facts from which the duty *prima facie* arises, and the failure to perform it, the burden is on the defendant to show an exception or excuse, if he have one."

This proposition may be admitted, but the law only imposes the duty upon the life tenant to pay the taxes where the property held for life is productive. One of the facts from which the duty to pay the taxes arises is the productiveness of the estate. Counsel also say that " It is generally the duty of a city to keep its streets in safe condition if it has funds or

means so to do ; " that the absence of funds will be a sufficient excuse, etc. But, in such cases, the law, which need not be averred or proved, confers upon the city ample means for procuring the necessary funds, and, therefore, presumes the existence of such means. In the absence of such a law, no such presumption would arise.

In the only case which we have been able to find, supporting the right of the appellants to recover for the loss of their estate in remainder for the non-payment of taxes, the rental value of the property was alleged and proven by the plaintiff, and it was only upon the fact that the income was shown to be sufficient to discharge the taxes and interest upon encumbrances, that the plaintiff was held to be entitled to recover. *Wade* v. *Malloy,* 16 Hun, 226. We think the burden of showing that the life-estate was productive rested upon the appellants, and that the petition for a rehearing should be overruled.

It was held in this case, with some doubt expressed in the opinion, that the warranty deed of Mary A. Clark to John Arthur was not an execution of the power of alienation which, by the will of Aaron B. Clark, accompanied the devise to her for life. It may not be improper to say here that a subsequent examination of the authorities has convinced us that the deed made by her to Arthur was a valid execution of the power. It appears that Arthur paid Mrs. Clark, for the lot, the sum of $1,450, its fair cash value. This somewhat distinguishes the case from *Dunning* v. *Vandusen,* 47 Ind. 423. In support of the conclusion here stated, see the following cases : *Funk* v. *Eggleston,* 92 Ill. 515 ; *Andrews* v. *Brumfield,* 32 Miss. 107 ; *White* v. *Hicks,* 33 N. Y. 383, and cases there cited ; *Amory* v. *Meredith,* 7 Allen, 397 ; *Hall* v. *Preble,* 68 Maine, 100 ; *Bishop* v. *Remple,* 11 Ohio State, 277 ; *Campbell* v. *Johnson,* 65 Mo. 439.

PER CURIAM.—Petition overruled.