[Civil No. 2784.  Filed April 26, 1929.]

[276 Pac. 850.]

ERNEST T. SMITH and WILLIAM R. ROBERSON, Appellants, v. EMMA TEEL, L. B. MORRELL, ADA SILLIMAN, MATHEW O. MORRELL, ALVIN C. WILSON, GEORGE T. WILSON, STELLA A. SHUMATE, CELIA HANEY, EDNA A. NORTON, CENITH I. HINDERSON, JOSEPHINE A. CLAIRE, ROY S. OSBORN, GLADYS E. BENNETT, WM. B. MORRELL, HELEN FINE SNYDER, and JOE J. WILSON, Appellees.

See Husband and Wife, 31 C. J., sec. 1303, p. 174, n. 93.
Wills, 40 Cyc., p. 1630, n. 14, p. 1830, n. 15.

Mr. Isaac Barth, for Appellants.

Messrs. Phillips & Phillips and Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellees.

McALISTER, J.—In 1908 George J. Smith died leaving in Maricopa county, Arizona, an estate consisting principally of seventy acres of land which was the community property of himself and wife, Edna A. Smith, who survived him. A few weeks before his death he executed a will, the material portions of which read as follows:

"First, I desire all my just debts fully paid.

"Second, I give, devise and bequeath to my beloved wife, Edna A. Smith, all my property both real and personal, to have and to hold unto her, my said wife, for and during the period of her natural lifetime, to use and enjoy the same in any manner she may see fit, and at her death whatsoever remains of the same, I give and devise and bequeath to my three children in the following manner, to wit: to Mary J. Sears, my daughter, an undivided one-fifth and to Ernest Troy Smith, my son, and Pearl Edna Roberson, my daughter, share and share alike, the remaining four-fifths of my property.

"Third, I hereby nominate and appoint my beloved wife, Edna A. Smith, sole executrix of this my last will and testament and I direct that no bonds be

required of her as such executrix, and I further give unto my said executrix full power and authority to sell any or all of my estate, both real and personal, and invest the same in any manner she may see fit, carefully managing the same and keeping account of the same so that my estate may be traced from time to time and at her death go to my children as hereinbefore provided.''

After Mr. Smith's death this will was probated, and his wife qualified as executrix of the estate and continued to act as such until her death in 1927. Though the debts were all paid by 1910, she did not wind up the estate or ask the court to distribute it, but instead, it appears from the evidence of appellees, kept the two interests together and treated them as one.

The land is just north of the Osborn Road between Central Avenue and Seventh Street, and the Indian School car line runs through it north and south near the center dividing it in the proportion of 31.33 acres on the west and 38.77 acres on the east. Approximately ten of the original eighty acres conveyed to George J. Smith by the patent evidently had been sold from the west half during his lifetime. Mrs. Smith, pursuant to the power of sale contained in the will, disposed of that portion lying west of the car line as follows: 1.50 acres for $750 in September, 1910, and 29.83 acres for $23,864 in November, 1913. One-half acre in the southeast corner of the east half was deeded by her to the trustees of the Bethel Methodist Church in 1914, but for this no consideration was received, it being her contribution toward the erection of a new building for the church of which she and her husband were for many years loyal members.

The deed conveying the 29.83 acres was signed ''Edna A. Smith, Executrix of the Estate of George J. Smith, deceased. Edna A. Smith, in her proper

person and in and for her own behalf,'' and recited that it was made pursuant to the authority conferred by the will and the order of the probate court confirming the sale and directing the execution of the conveyance. The deed to the one-half acre was practically the same in form, though that disposing of the 1½ acres was merely a quitclaim and signed by Edna A. Smith alone. It appears that at the time the west 31 acres were sold for $25,000 the east 38 acres were valued at $18,000.

A part of the money received from the land, though it does not appear how much, was loaned by Mrs. Smith on promissory notes secured by mortgages on real estate and the interest thereon collected by her, and when she died there was $13,000 in such notes unpaid. These loans, $600 in cash, and the 38.77 acres east of the car line, constituted the total of what remained at her death of the property owned by her and Mr. Smith at the time of his death.

Following the passing of Mr. Smith, Mrs. Smith continued to occupy the home, which was located on the east half of the land, with one or more of her children by a former marriage and enjoyed the benefits and income therefrom, and after her death appellees, some of whom are the children and the others grandchildren of Mrs. Smith by this former marriage, retained possession thereof and claim as the devisees of Mrs. Smith to be the owners of an undivided one-half interest therein. The two children, the issue of the marriage of Mr. and Mrs. Smith, or rather one of them, Ernest T. Smith, and William R. Roberson, the husband and sole legatee of the other, Pearl Edna Roberson who died in 1924, filed this action in which they claim that since the life estate of Mrs. Smith in the land left by their father had terminated, they, as sole legatees under his will, are the owners in fee of the 38.77 acres thereof remaining and ask the court

to quiet title thereto in them, the one-fifth interest devised to Mary J. Sears, the daughter of Mr. Smith by a former marriage, having been purchased by them.

Under these facts it is perfectly clear that Mrs. Smith was the owner in fee of one-half of the seventy acres, it being community property, and under the terms of Mr. Smith's will that she was also after his death the owner of a life interest in the other half. It is likewise true that what remained of Mr. Smith's one-half of the community at her death passed immediately to those to whom he had devised it, or their heirs or assigns. Appellants, however, took the position in the trial court, and take it here, that since Mrs. Smith had under her control both community interests and disposed of an undivided one-half portion thereof in her lifetime, either by sale or gift, and used the proceeds thereof for her own benefit, the law conclusively presumes that she sold her undivided half and held the other as trustee for those to whom it was to go at the termination of her life estate. The court, however, held that the property had never been divided and that one-half of what remained at the death of Mrs. Smith—the cash, notes and land— vested immediately in Mr. Smith's devisees, appellants here, and the other half in Mrs. Smith's devisees, appellees here, and dismissed the action. And it is this judgment that we have been asked to review.

The only assignment is that the court erred in rendering judgment for appellees for the reason that it appears from the pleadings and evidence that they claim one-half of the 38.77 acres of land in question as devisees of Edna A. Smith, when the record discloses that though she was the owner of an undivided one-half interest in the entire 70 acres she gave away, sold and conveyed in her lifetime one-half thereof

and converted the proceeds to her own use, and such being true the law conclusively presumes that she sold and gave away her own undivided one-half, and that the remaining 38.77 acres are the property of appellants and were held by her merely as trustee for them.

This contention is grounded upon the proposition that though Mrs. Smith was empowered to sell all or any portion of Mr. Smith's interest in the land, she was not authorized to use the proceeds thereof for her own use, but was compelled by the terms of the will to invest them, or at least manage them in such a way that they might be easily traced and at her death turned over to appellants. They contend that the will does not authorize her to use and enjoy any part of the *corpus* of the estate but only the income from it, and this is true, they say, because there is no reference to the power to sell in the second paragraph of the will where the right to use and enjoy the estate as she sees fit is given, but that the only mention of such power is in the third paragraph, and it is there so circumscribed that if she did sell any portion of the estate she was compelled to invest the proceeds and so manage them that they could be traced from time to time and at her death turned over to his children. It is clear, they argue, that he knew Mrs. Smith's interest in the estate would and should go to her children at her death, and, desiring to keep his intact for his children, he incorporated in the will the following provision, which, according to appellants, limits her use and enjoyment of his estate to the income only and therefore accomplishes the purpose they attribute to him:

"I further give unto my said executrix full power and authority to sell any or all of my estate, both real and personal, and invest the same in any manner she may see fit, carefully managing the same and keeping account of the same so that my estate may be traced

from time to time and at her death go to my children as hereinbefore provided.''

This construction of the will is, in our view, too narrow. It is admitted by appellants that Mrs. Smith was given the power to sell all or any portion of the real estate she saw fit, and looking at the will as a whole it seems clear to us that Mr. Smith did not intend that she should invest all the proceeds of such sales and preserve them in their entirety for the remaindermen unless there was in her judgment ample for her use and enjoyment without doing so, because in disposing of his property it is evident that her needs and comforts came first, and for the purpose of avoiding any uncertainty in this particular he gave her the right to use and enjoy it while she lived in any manner she cared to and his children the ownership in fee of whatever remained of it at her death. His intention was that she should sell all or any portion of it if such action in her judgment became necessary to satisfy her needs and bring her the enjoyment he wished her to have. If the interest on the proceeds of such sales when invested, together with the income from the unsold portion, were not sufficient for her, the principal to the extent of her needs and comforts was also placed at her disposal. She was not limited unreasonably in her own use and enjoyment of the estate, but was given the right to use it any way that her judgment told her would bring this result. If she had felt that she would enjoy an extensive trip abroad, for instance, the right to use it for that purpose was hers. The expression, ''whatsoever remains of the same'' at her death, in connection with the language empowering her to use and enjoy the estate as she saw fit, points unmistakably, we think, to this conclusion. It was not necessary that a specific statement, such as, ''I give to my wife the right to sell any or all of my real or personal

property and to use the proceeds thereof," be employed by him before it could be said that the right to sell and use the proceeds had been granted. It is sufficient if the fair import of the language employed by the testator is to this effect.

Such is the construction placed upon wills of similar import to which our attention has been called. For instance, in *Trustees Presbyterian Church* v. *Mize,* 181 Ky. 567, 2 A. L. R. 1237, 205 S. W. 674, a typical case, the testator bequeathed all her property to her husband "to have and to enjoy same during his natural life, and at his death should there be anything left," it was her wish that it go to a designated church, and in commenting on this the court used the following language:

"She evidently contemplated and intended that the uses which the husband would make of the estate would not consume it all during his lifetime, or else, there was no occasion for a devise of the remainder. She intended in the language of the will to give it to him to be 'enjoyed' by him, during his lifetime. If anything remained above what was necessary to be consumed for his reasonable support during his life, she intended that the church should receive it as the devisee, in remainder. He cannot waste the estate nor give it away, nor dispose of it, except for his own necessary use. That is the meaning of the implied power of disposal. He has a right to the entire income from the property, and may encroach upon the principal, if such an encroachment is necessary to a reasonable and comfortable support for himself. He is authorized to make a sale of the property, or of such part of it as may be necessary for the attainment of the above results."

In *Greenwalt* v. *Keller,* 75 Kan. 578, 90 Pac. 233, the testator used this language: "I wish my wife, Elizabeth Bunt, to have all my property of every kind that I may own at my death, to have for her own use and benefit while she may live, and at her death all

property that may be left by her'' was to go to other persons. In construing this language the court said:

"By the use of the last clause of the last sentence the power of disposal in fee is added to that which would otherwise constitute a life estate only. The only property which he intended his heirs to receive was whatever might be left by the mother at her death. This clearly indicates that he intended her to use and permanently dispose of a part of the estate so that it would not be in existence at the time of her death for the benefit of the heirs. We think this amounts to a life estate, with power to convert in fee.''

See *Young* v. *Hillier*, 103 Me. 17, 125 Am. St. Rep. 283, 67 Atl. 571; *Clark* v. *Middlesworth*, 82 Ind. 240.

It follows from this that the contention of appellants, that the authority to sell conferred upon the executrix in the third paragraph of the will was given for the sole purpose of investment for the benefit of the testator's children, finds support in the record only in so far as the proceeds of the sales that remained after Mrs. Smith had used and enjoyed them as she saw fit are concerned. This provision did not limit her use and enjoyment, but merely directed the executrix as to the method in which the portion not used for her own personal benefit should be managed. Mr. Smith realized that while she might find it necessary to sell a part of it to meet her needs and comfort, she would not in all probability use the entire estate, and he wanted what she did not consume preserved for the benefit of his children. As long, therefore, as she sold and used the proceeds for her own use and enjoyment or invested them so they could be traced from time to time and at her death go to his children, she was acting within the terms of the will.

It follows from this, however, that if she did apply any portion of the proceeds of the estate to any

other purpose, such action was unauthorized, and those who are entitled to the remainder of the estate would have the right, in a proper action, to trace it and have it impressed with a trust in their favor. This, however, does not apply to the conveyance to the Bethel Methodist Church of the one-half acre, for the reason that she gave that as her contribution toward an improvement the church was then making and in doing so she was using the estate in the manner provided in the will. Both she and Mr. Smith were deeply religious people and had been members of that church for many years and, bearing this in mind, it is difficult to conceive of a purpose to which she could have applied it that would have brought her, a devout Christian, any greater degree of the enjoyment Mr. Smith wanted her to have out of his estate, or that would have been more in keeping with what he himself would have done had he been living when the occasion for making the contribution arose. The gift of land, one-half of which was then valued at $200, differs in no sense from one of money or other personal property of the same value, and it is improbable that a contribution in this form would ever be questioned upon the ground that it does not come within the terms of the will where the circumstances surrounding its existence are the same as in this instance.

It being true, therefore, that Mrs. Smith was authorized to· sell the property of the estate and apply the proceeds to her own use and enjoyment in any manner she saw fit, there is no basis for the contention of appellants that since she sold one-half of the estate for $25,000 and used during the next fourteen years fifty per cent of this together with the interest received from all the loans, which they allege amounted to an additional $25,000, it shows that she intended to obey the law by selling what she had a right to sell—her own one-half—and retain the other half for

appellants. The record discloses that she kept the two estates together, treating them as one; that when she disposed of any portion of it she sold as much from one interest as from the other and made loans in the same way, there being at the time of her death $13,000 of the proceeds of such sales invested and secured by real estate mortgages. There are no facts in the record indicating that when she sold the 31.77 of the 70 acres she thought she was selling her interest only and none which would justify, much less compel, the court to presume that such was her intention. The fact, alone, that the acreage she sold was valued at $25,000 when the portion it is claimed she intended appellants to have was valued at only $18,000, points very strongly to the conclusion that she had no such intention, for it is unreasonable to presume that a person of the unquestioned integrity of Mrs. Smith would ever have made such an unequal division of the property.

Appellants contend that Mrs. Smith commingled her estate with that of Mr. Smith in such a way that the one-half or 35 acres constituting his interest in the property could not be properly identified. There are no facts here to which the doctrine of the commingling of funds applies. She merely treated the two estates as one, both in the management of it and the sale of parts of its assets, as she had a perfect right to do so long as she did not use that portion of the proceeds of the sales belonging to the estate of Mr. Smith for a purpose other than that mentioned in the will. If she did this, appellants might trace the fund thus spent and impress it with a trust in their favor or make it a charge against Mrs. Smith's estate, but in an action to establish this the burden of proving it would be upon them, because the presumption, and there is nothing here to the contrary, is that all her acts were performed pursuant to and in accordance with the terms of the will.

There is nothing in the record showing that what remained of the property of the two estates—$600 in cash, $13,000 in notes secured by mortgages, and the acreage east of the Indian School car line—did not upon the death of Mrs. Smith vest, as we stated in the recent case of *Roberson et al.* v. *Teel et al., ante,* p. 166, 275 Pac. 2, one-half in her devisees and the ·other half in the remaindermen under the will of Mr. Smith, and this being true it should now be divided between them in this proportion. No facts appear establishing any right in appellants to a judgment quieting title in them to the 38 acres.

The judgment of the trial court dismissing the action was correct, and is therefore affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.