## Nathaniel F. Waring and others *vs.* Henry P. Waring and others.

A testator, by the second clause of his will, devised as  follows : " I give and bequeath to my beloved wife all and singular my household furniture, (my library only excepted,) to her only proper use, benefit and behoof, forever.    And I also give and bequeath unto my said wife, for and during her natural life, the full and free use and  occupation of my present residence and dwelling house, together with all my lands and the houses and buildings thereon in the said fourth ward of the city of Brooklyn, &c. And I also give unto my said wife, the use, income and enjoyment of the one equal third part of all the rest, residue and remainder of my estate, both real and personal, after deducting from such residue the legacies hereafter bequeathed, and paying the debts therefrom, as hereinafter directed, for and during her natural life, *all which said bequests to my said wife are intended and hereby declared to be in full satisfaction and bar of her dower in my estate.*" The first part of the sixth clause of the will was as follows : " As to all the rest, residue and remainder of my estate, both real and personal, in law and in equity, in possession, reversion, remainder and expectancy, after paying my said debts and the said legacies herein given, and *setting apart and leaving to my said wife* the estates, goods, chattels, matters, interests and things herein and hereby given and bequeathed unto her, I give, devise

Waring *v.* Waring.

and bequeath the same to my said executors, and the survivors and survivor, and the executors, &c. of such survivor forever, *in trust* and for the uses and purposes herein after declared." The trusts were, to sell and convey the lands, and to distribute the proceeds in unequal portions and at different periods, amongst the descendants of the testator. A codicil, dated March 5, 1848, contained this clause: "I hereby authorize and empower my said wife to sell and convey *any and every part and parcel* of the land and buildings mentioned in the second clause of my will, &c., the use and occupation of which I have given and devised to her in·and by said second clause, for her life, and to dispose of the proceeds thereof as she shall find necessary and proper." The testator survived his wife, and died in April, 1851, seised in fee and possessed of the premises in question. *Held*, that the real estate devised to the widow did not pass under, nor was the title to it affected by, the residuary clause in the will; but that, in the event which had occurred, it descended to the heirs at law of the testator, in fee.

Where real estate is specifically devised, and the devise does not take effect, in consequence of a lapse by the death of the devisee in the lifetime of the testator, or from the not happening of the contingency upon which, as a condition precedent, the devise was made or was to take effect, it descends to the heir at law as property undisposed of by the will.

THIS was an action for the partition of real estate. The opinion sets forth the facts. The cause was heard on the complaint and answer.

*N. F. Waring*, plaintiff in person.

*J. A. Lott*, for the defendants.

*By the Court*, S. B. STRONG, J. The plaintiffs ask for the partition of certain lands of the late Henry Waring, situate in the fourth ward of the city of Brooklyn, between such of the parties to this suit as are the heirs at law of the late proprietor. Five of the defendants answer that the rights of the heirs at law of the deceased to the lands described in the complaint, depend upon the construction and effect of his will and codicil, and the defendants Henry P. Waring and Stephen Waring, named as trustees in the will, claim such rights (if any) as those documents confer upon them. The will is dated on the 25th of January, 1836. The second clause is in the following words: "I give and bequeath to my beloved wife all and singular my house-

hold furniture, (my library only excepted,) to her only proper use, benefit and behoof, forever. And I also give and bequeath unto my said wife, for and during her natural life, the full and free use and occupation of my present residence and dwelling house, together with all my lands and the houses and buildings thereon in the said fourth ward of the city of Brooklyn, bounded westerly by Fulton-street, easterly by Washington-street, southerly by Johnson-street and northerly by land of Jacob Bergen, Esquire, and the appurtenances thereunto belonging. And I also give unto my said wife the use, income and enjoyment of the one equal third part of all the rest, residue and remainder of my estate, both real and personal, after deducting from such residue the legacies hereafter bequeathed, and paying the debts therefrom, as hereinafter directed, for and during her natural life ; *all which said bequests to my said wife are intended and hereby declared to be in full satisfaction and bar of her dower* in my estate." The first part of the sixth clause of the will is as follows : " As to all the rest, residue and remainder of my estate, both real and personal, in law and in equity, in possession, reversion, remainder and expectancy, after paying my said debts, and the said legacies herein given, and *setting apart and leaving to my said wife the estates,* goods, chattels, matters, interests and things herein and hereby given and bequeathed unto her. I give, devise and bequeath the same to my said executrix and executors," (the wife and their sons, Henry and Stephen,) "and the survivors and survivor of them, and the executors and administrators of such survivor forever, in trust and for the uses and purposes hereinafter declared." The trusts are to sell and convey the lands and to distribute the proceeds in unequal portions and at different periods amongst the descendants of the testator, and are confessedly valid. The question whether the trustees took the estate, or only a power to dispose of it, is immaterial to the present controversy. The fifth clause of the codicil (which is dated on the 5th of March, 1848,) is in the following words : " I hereby authorize and empower my said wife to sell and convey *any and every part and parcel* of the land and buildings mentioned in the second clause of my said

last will and testament, being all my lands and real estate in the fourth ward of the city of Brooklyn, the use and occupation of which I have given and devised to her, in and by said second clause, for her life, and to dispose of the proceeds thereof as she shall find necessary and *proper.*" The testator survived his wife, and died in April, 1851, seised in fee and possessed of the premises in dispute.

There cannot be much, if any, doubt as to the *estate* given to Mrs. Waring, and which she would have taken had she survived the testator. The will gave her a particular estate in the lands for life. The codicil conferred upon her an absolute power of disposition, not accompanied by any trust. She was authorized and empowered to sell and convey "any and every part and parcel" of the land and buildings. The power was not restricted by any direction as to the application of the proceeds. She might *dispose* of them as she should find necessary and *proper.* Had the word "necessary" stood alone, that might have limited the application to the necessaries of life, and possibly have restricted the power accordingly. But the word "proper" is added, and to give it *any* meaning the conjunction connecting the two must be changed from the copulative to the disjunctive. The power to dispose of the proceeds of property as the devisee might "find proper," without any specification of the objects, must necessarily be absolute. It is clear that the power is unaccompanied by any trust; consequently the estate given to Mrs. Waring in the will was, under our statute, an absolute fee. (1 *R. S.* 732, §§ 81, 83.) The counsel for the defendants contended that, inasmuch as the power never became operative, by reason of the premature death of the devisee, the conversion of the life estate into a fee was not effected. It is true that in the end she took no estate whatever. But in this case the question is, what estate was specified in the will; for that, and not what should be actually and eventually acquired, was to be "set apart" from what was given in the residuary devise. Now the estate given to Mrs. Waring in the will is precisely what the statute declares it to be, an absolute fee. A will does not *proprio vigore* create any estate. It defines the *in-*

Waring *v.* Waring.

*tended* estate, and provides for its expected transmission, and of course it can pass in no other condition or way under the will. In this case, as I have already intimated, the description of what was given by the residuary devise excludes the estate given to Mrs. Waring in the will, and it cannot be included in the general devise, whether the particular devise has become effective or not.

The devise to Mrs. Waring of course lapsed, by her death, in the lifetime of the testator, and it becomes an important question whether the " estate" devised to her eventually passed under or was affected by the residuary devise. The specified estate was not at all affected by the residuary devise, if, as I have already intimated, it was expressly excluded. A devise can never pass land against the expressed intention of the testator; nor, as I understand the rule, when a contrary intention is plainly implied. Where a testator devises his land to one, he does not, ordinarily, intend that it shall go to another. If a possible failure of the gift is contemplated, an alternative provision is generally adopted. It has therefore been long, and very properly, settled that a lapsed devise does not enure to the benefit of a residuary devisee, and the land of course descends to the heirs at law. The rule is not changed, or at all affected by the provision in our revised statutes, that " every will which shall be made by a testator in express terms of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death." (2 *R. S.* 57, § 5.) The revisers stated that their object was to pass subsequently acquired land. Both devises of real estate and bequests of personal property are now assimilated so far that they may include intermediate acquisitions. In this particular they effectuate the intentions of testators, and are therefore reasonable and proper. But I could never discover any substantial reason for the original establishment of the rule, that a residuary bequest should include all other legacies which might fail by the death of the legatees, or from inherent defects. The will undoubtedly becomes effective at the death of the testator, and not before; but then it declares his intentions, and they

should prevail, if sufficiently indicated. Those intentions exist at the time when the will is made, and are controlled by the *then* existing circumstances. It is clear that the testator does not then design to include any of the specific legacies in the residuary bequest. Nor is the language ordinarily used, susceptible of such interpretation. The words "rest and residue" mean what is left after making certain deductions. What deductions? Assuredly what is otherwise bequeathed. The rule then, as to lapsed or defective legacies, does not effectuate, but countervails, the actual and declared intent of the testator. It is said, however, that the will constitutes the executor a testamentary heir as to the personal estate, and that he must become such upon the death of the testator, and succeed him as to all the personal property which he *then* possessed. That may be so, but the executor takes the property in trust for those to whom it is given, and as it is given, in the will; and, if any part of it is not effectually disposed of by such will, for the next of kin, to whom it is to be distributed. He is bound to conform to the expressed will of the testator. The character in which he takes the personal estate does not exempt him from, but enforces, the performance of the obligation. But although the rule as to the extent of residuary bequests may not have been originated in any sound principles, it has, nevertheless, been thoroughly established, and must prevail. There can be no reason, however, why the provision of our statute, by which devises of real estate are made to include subsequent acquisitions, should be extended so far as to comprehend rules relative to bequests of personal property which counteract the intentions of testators, and have no solid foundation. The language does not require it, and as it is an innovation upon the common law, it should be subjected to a strict interpretation. It does not even in terms extend to or affect lapsed, defective, or otherwise ineffectual devises, as a residuary devise is never "in express terms of all the real estate," but only of what is left after a deduction of what is specifically given; nor does it denote an intent to devise all the real estate which the testator was entitled to devise to the residuary devisee.

It was contended, however, by the defendants' counsel, that as

the lands were devised to Mrs. Waring expressly in lieu of her dower, and as she might elect to take her dower and thereby forfeit what the will purported to give to her, there was a contingent interest not included in the devise to her, which passed under the residuary devise. There can be no doubt but that, ordinarily, contingent interests pass under a residuary devise, unless they are expressly excluded. They are thus excluded where there is an exception of the corpus of the thing, and not merely of an interest in it. In the present case, however, the exception is of the estate, and not in terms of the land, and the question is whether, excluding the estate, there is any thing left. The estate given is the absolute fee and that excludes all other interests. There is a possibility of a retention of the estate in the event of its non-acceptance by the devisee; and so there is in every case, as a devisee is not bound to accept the intended gift. But does such possibility reserve a contingent interest which will pass under the residuary devise? The rule is, that where the contingency naturally results from the devise itself, and is such as the testator may well be supposed to have contemplated when he made his will, the alternate estate may be included. That is carrying out the reasonably inferred intent of the testator. But when the contingency is so remote that it could not have entered into the contemplation of the testator, it cannot be supposed to have at all influenced him in making his arrangements as to the final disposition of his property. It is possible that the devisee may be dead when the will is made, or if then living that he may die in the lifetime of the testator, or, as I before mentioned, that he may refuse to accept the gift. But these are contingencies not ordinarily contemplated, and the possibility that the intended gift may become ineffectual in such cases, does not enter into the consideration of the testator; nor should it affect the interpretation of the dispositions made in his will. The language used by the testator in this case, and the beneficial nature of the devise to his wife, exclude any inferance that her refusal to accept it in lieu of her dower was at all contemplated. The case of *Roe* v. *Flood* is a strong authority on this subject. Chief Justice *Willes* states it in his valuable

Reports (*p*. 300) as follows : " A man devised lands to R. Bishop and his heirs forever, *on condition to pay all his debts, legacies and funeral expenses*, and at the latter end of his will he gives and devises all the rest and residue of his real and personal *estate*, whatsoever, not before therein bequeathed to Elizabeth Flood, the defendant. R. Bishop died before the devisor. It was holden by the whole court that the heir should have the lands devised to R. Bishop, and not Elizabeth Flood, the residuary devisee ; for *that the devise must be taken to mean the rest and residue of the lands unbequeathed at the time of the making of the will*, at which time all the estate in those lands was disposed of." In the case of *Doe* v. *Underdown*, (*Willes' R.* 293,) the testator had devised certain lands in fee to three, as tenants in common, *chargeable with annuities to each of their parents*, and the rest, residue and remainder of all other his estate, whatsoever, real and personal, *not before given and bequeathed*, to a daughter. One of the devisees of the lands specifically given, died before the testator. It was held that those lands did not pass to the residuary devisee, but descended to the heirs at law of the testator. In *James* v. *James*, (4 *Paige*, 115,) there was a devise of a house and lot to the testator's wife for life, with power to dispose of the same by her will to their descendants in fee, with the power of selection, which, with certain legacies, *was to be in lieu of her right of dower*, and there was afterwards a devise to certain trustees, of all the testator's estate, real and personal, and *not before bequeathed to his wife*. The widow elected to take her dower. It was held by the chancellor, that the whole legal and equitable interest in the house and lot devised to the widow descended to the heirs at law of the testator, and did not go to the trustees under the will. In that case the chancellor said, if a part of the real estate is specifically devised, and the devise does not take effect, either from the incompetency of the devisee to take, from a partial revocation of the will, a lapse by the death of the devisee in the lifetime of the testator, *or from the not happening of the contingency upon which as a condition precedent the devise was made, or was to take effect*, it descends to the heir

at law as property undisposed of by the will. He further re-marked, that the testator seemed to have taken it for granted, either that he had a right to bar the wife of her dower by a spe-cific provision in lieu thereof, *or that she would elect to receive the provision. He therefore devised to the trustees the residue of his estate not therein before devised or bequeathed to his wife.* It is true that the same learned chancellor afterwards in-timated a different opinion. (10 *Paige,* 193. 3 *Barb. Ch. R.* 101, 102.) But the question was not necessarily involved in either of those cases, and the new opinion does not seem to have been expressed positively, or with entire confidence. I prefer his first opinion, particularly as it was well considered, and fully supported by other cases, and is conformable to the important principle on which they were founded.

I assume, in this case, that the will and codicil must be con-sidered as one instrument, and that the word " estate," as appli-cable to what had been given to the wife, and which is excepted in the residuary devise, has reference as well to what was devised to her in the codicil, as to the gifts to her in the will, and that the provision that the bequests and devises to the wife are to be accepted by her in lieu of her dower, qualified all the uses given to her in both instruments. This is in accordance with the author-ities. (1 *Jarman's Powell on Dev.* 20, *and the cases there cited.*)

Upon the whole, I am satisfied that the premises in dispute did not pass under, nor was the title to them affected by, the residuary clause in the will, but that in the event which has hap-pened, they descended to the heirs at law of the testator in fee.

The plaintiffs are entitled to the partition demanded in their complaint. It must be so declared, and it must be referred to Judge Morse to take the usual proofs, and report thereon to this court. Should there be a sale, it would certainly be proper that the defendants, who are named as trustees in the will, should be reimbursed their expenditures on and about the premises, after charging them with what rents or other income they may have received, and that all parties should receive their costs out of the proceeds.

[KINGS SPECIAL TERM, April 17, 1854. *S. B. Strong,* Justice.]