Martin, J.
This was an action for the construction of the will of Robert S. Phelps, deceased. The will was executed on the 14th day of July, 1881. By the first clause the testator gave to James W. Manier 250 shares of Susquehanna Valley bankstock in lieu of all claims for fees as executor of his will. By the second, he gave to Lizzie, Freddy and Frank Smith each the sum of $10,000. By the third, he gave to Andrew Jackson, $2,000. The fourth clause provided that if he should die leaving any child or children, the remainder of his estate should be equally divided between his wife and such child or children, share and share alike ; but not to be divided until the youngest child should arrive at the age of twenty-one years, his wife to have the income, except that each child was to receive the income of his or her share upon arriving at the age of twenty-one years. The fifth clause was as follows: “Fifth, in case I shall die leaving no child or children, and no child of my body shall be born after my death, then I give, devise and bequeath the use and income of all my said remaining property and estate to my wife Hattie S. Phelps during her natural life, and at hér decease, I give, devise, and bequeath all. my said remaining property and estate to the children of Norman Phelps, of Binghamton, N. Y., the children of John 0. Phelps, of Wilkesbarre, Pa., and to Horace Phelps of Scranton, Pa., said remaining estate and property, to be divided between said Horace Phelps and each of said children, share and share alike. The bequests in this will to my wife are intended to be and are given to her in full satisfaction and recompense of and for the dower and thirds which she may be entitled to out of my estate.” The testator’s wife -and James W. Manier were, by the sixth clause, ap *125 pointed executrix and executor of said will, and given “full power to sell and convey any part or all of my real estate and personal property, and to reinvest the proceeds thereof in such manner as they may think to be for the best interests of my estate.”
The testator died December 14, 1881, leaving no child, and none was afterward born. He left a widow, but no parents, brothers, sisters, nephews or nieces. His will was duly admitted to probate April 20, 1882, and letters testamentary were duly issued to James W. Manier and Hattie S. Phelps as executor and executrix of said will, who thereupon duly qualified as such, and entered upon their duties. His widow accepted under the provisions of said will in lieu of her dower or any interest in said estate, and receive the use and income of the residuary estate during her life. Horace Phelps died November 19, 1881, which was after the making of this will, and before the testator’s death. The testator was present at his death. The widow died October 5, 1882. Norman Phelps had three children, and John 0. Phelps five children, when this will was made, all of whom are still living.
The following questions are involved in this action, and arise under the fifth and sixth clauses of the will. 1. Did the share in the residuary estate which Horace Phelps would have taken had he survived the testator vest in the surviving residuary legatees upon the testator’s death, or did it pass to the testator’s heirs or next of kin, as property undisposed of by the will ? 2. If to his heirs and next of kin, was such share one-ninth or one-third of such residuary estate ? 3. If to the heirs and next of kin, did the widow become entitled to the share of the personal estate so bequeathed ? 4. Do the children of Norman and John C. Phelps take each an equal share in said residuary estate ; or do the three children of Norman take one-half, and the five children of JohnO. the other half ? 5. Is the *126 plaintiff, as surviving executor, authorized, and is it his duty, to sell and convey such portion of the real estate as in his judgment seems for the best interest of the persons entitled to the same, and to distribute the avails \
The first and most important question in this case is, did the share in the residuary estate which Horace Phelps would have taken had he survived the testator, vest in the residuary legatees living at the testator’s death, or did it pass to the testator’s heirs and next of k,in as property undisposed of by the will \ It seems to be well settled that if the devise and bequest to Horace Phelps has lapsed that it must be treated as property undisposed of by the will, and that as to such portion of the estate the testator died intestate (Vernon v. Vernon, 53 N. Y. 352; Warring v. Warring, 17 Barb. 552 ; Floyd v. Barker, 1 Paige, 480). None of the parties controvert this proposition. The general rule is also clear that if the legatee dies béfore the testator, the legacy lapses, because the will, not taking effect until the death of the testator, it can communicate no benefit to the persons who previously die (1 Jarm. on Wills [5th Ed. Bigel.] 338).
To this rule there are, however, exceptions, which are as well settled as the rule itself. "One of them is, where the devise or bequest is to a plurality of persons as joint tenants. In such a case no lapse can occur unless all the objects die in the testator’s lifetime, because, as.it has been expressed, “ each is a taker of the whole, but not wholly and solely,” and any of them existing when the will takes effect will be entitled to the entire property (1 Jarm. on Wills, 341). It is not, and I apprehend it cannot be, successfully contended in this case that the gift to the residuary devisees and legatees mentioned in this will was to them as joint tenants. The devise and bequest is to Horace and each of said children share and share alike. This con-
L *127 stituted them tenants in common and not joint tenants, and that, too, independent of the statute, 3 R. S. {7th Ed.) 2179.
Another exception to the foregoing rule is, where a devise or bequest is given to a class of persons as tenants in common. In such case, those of the class described, who survive the testator, are admitted to be the exclusive objects of the gift; or, to state the exception in the language of an eminent text-writer: “ Where the devise or bequest embraces a fluctuating class of persons, who by the rules of construction are to be ascertained at the death of the testator or at a subsequent period, the decease of any of such persons during the testator’s life will occasion no lapse or hiatus in the disposition, even though the devisees or legatees are made tenants in common, since members of the class antecedently dying are not actual objects of the gift ” {1 Jarm. on Wills, 341; Downing v. Marshall, 23 N. Y. 366, 373, 374; Teed v. Morton, 60 N. Y. 502, 506 ; In re Coleman & Jarrom, L. R. 4 Ch. Div. 165, 169).
It is contended by the surviving residuary legatees and devisees, that the residuary devise and bequest, given by the fifth clause of this will, was to a fluctuating class of persons, to be ascertained at the death of the testator, and hence there was no lapse of the share of the residuary estate given to Horace Phelps, but that they only were the objects of the gift. This contention is challenged by the heirs-at-law and next of kin of the testator, and also by the personal representative of the deceased widow. It seems to be admitted by all the parties to this controversy, that if this gift had been to the children of Norman Phelps, or to the children of Norman Phelps and to the children of John C. Phelps, it would have been a gift to a class, and within the exception above stated. But the heirs-at-law, next of kin and representative of the widow, insist *128 that Horace Phelps being made a residuary legatee and devisee with the others, and being, named, in the will as such, the gift was not to a class, but to the individuals named and described in the residuary clause of the will. Hence, it becomes necessary to inquire and determine what constitutes a class within the intent and meaning of this exception. The contention of the. heirs and representative of the widow is, that a gift to a class isagii't to a set of persons, all filling one common character and having some common attribute. The residuary legatees deny this contention, and assert that if the devise and bequest embraces a fluctuating class of persons, to be ascertained at the. death of the testator, that such devise, or bequest is to a class and within the exception. As there is some conflict - in the authorities bearing upon this question, it may be well to examine them before proceeding further, and see, if possible, upon which side the weight of authority rests.
In Jarm. on Wills a distinction is made between the word “ class ” when used in a popular sense, and when, used in a legal one. It is there said : “A number of persons are popularly said to form a class when they can be designated by some general name, as children, grandchildren, nephews; but in legal language the question whether a gift is one to a class, depends not upon the consideration, but on the mode, of the gift, namely, that it is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal, or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons.” The distinction between the word “class,” when used in its popular sense and when used in its legal sense, is illustrated by the author as follows : “Thus a bequest of one thousand pounds to the children of A. *129 the eldest child to take one moiety, the younger children the other moiety, is in ordinary language, a gift to one class of persons, namely, children. In the legal acceptation of the words it is a gift, partly to an individual, namely, the eldest child of A., and partly to a class, namely, his younger children. On the other hand, a gift to A., B. and C., and the children of B., share and share alike, may, legally speaking, be a gift to a class ; but yet these persons would not, in the ordinary acceptation of the term, form a class” (1 Jarm. on Wills, 269).
In Porter v. Fox, 6 Sim. 485, where among the bequests there was one to the testator’s grandchildren, and to his nephew Thomas Owen, to be distributed as they should become of the age of twenty-five years, it was held, that the grandchildren and nephew constituted a class. In Shaw v. McMahon, 4 Dr. & W. 431, where the gift was to be divided in equal parts amongst all the children of the testator living at his death, including his sons Beresford and William, and by a codicil the gift to William was revoked, it was he id, that the gift was to a class, and the other residuary legatees took the whole.
In Clark v. Phillips, 17 Jur. 836, where there was a bequest of the residue to the children of A., to the children of B., to C., to the children of B. and to E., in equal shares, and the testator, by a codicil, revoked the gift to C. and to the children of A. with a declaration that they should not be residuary-legatees, it was held that the gift of the residue was to the residuary legatees as a class, notwithstanding that some of the individuals to take were named, and that the effect of the will and codicil taken together was to give all the residue to the legatees whose bequests were not revoked. In delivering the opinion in that case the Vice-Chancellor said : “Upon principle I cannot decide that certain individuals being named to take with a *130 class or particular members of it can alter the construction to be put upon words of revocation of this kind. What is to be considered is, whether or not there is an intestacy—whether a testator by merely revoking the gift as to some members of the class and saying no more, means that the whole residue should not go to those, who, after withdrawing some, should still compose the whole class1. Therefore, if there had been nothing in the will to show that the testatrix intended that the whole residue should go to those members of the class who should remain after the codicil had full operation given to it, I should, independently of any particular expression importing intention, have held it impossible to say that there was any intestacy.”
In re Stanhope’s Trusts, 27 Beav. 201, where a testator having five daughters gave a legacy to one, and the residue to the remaining four byname, and their issue, but he afterwards directed that any subsequently born daughters and their issue should be entitled to equal shares with the four daughters, and one of the four died without issue in the life of the testator, it was held, that there was no intestacy, that the daughters took as a class, and that those who survived took the whole. The Master of Rolls in that case says : “A person may make a bequest to a class, as to the daughters of A. and to the daughters of B., and he may add any other person to. them, making together one class.”
In Aspinall v. Duckworth 35 Beav. 307, where a testator bequeathed a fund to his nephew A., and to the children of his late sister B., as tenants in common, but in case any die before the testator, leaving issue, his share was not to lapse, but to go to his executors as part of his personal estate, and three of the children of B., died before the testator and left no issue, held, that the gift was to a class, and there was no lapse, but that the whole went to the other members *131 of the class. In that case the Master of Rolls said, “ The first gift is to the plaintiff and the children of the testator’s deceased sister, or to their respective executors, administrators or assigns, as tenants in common. If the will had stopped there, there would be no but question that it was a gift to a class, and that if one of them happened to die in the testator’s lifetime, the survivors would take the whole, and if only-one survived, he would take the whole fund.” He then considers the effect of the provision as to lapse, and holds that the word was not used in its technical sense, and hence, did not change the character of the legacy.
In Chester v. Phillips, 36 L. T. 500, where a husband bequeathed his personal estate to his wife for life, and after her death,“ to be divided among my heirs and to their children, with H. R. P., share and share alike,” and the testator had five brothers and sisters, some of whom died in his lifetime, leaving issue, others survived him and died in the lifetime of their mother, leaving issue, it was held, that by the word heirs was meant next of kin exclusively of the widow ; that it was a gift to a class, to be ascertained at the testator’s death, and consisting of the brothers and sisters living at the death of testator, the children of brothers and sisters then dead, and H. R. P., and that these persons took vested interests.
In Shiers v. Ashworth, L. R., 25 Ch. Div. 162, there was a bequest of the residue “in trust for my son George, my daughters Lydia, Mary Ann, Alice, and Frances, and such of my child or children, if any, hereafter to be born, as shall attain the age of twenty-one years or marry, in equal shares, as tenants in common.” The testator had six children only, the five named and one other, all of whom had attained twenty-one at the date of the will. Of the named children two died in the testator’s life time, without *132 issue, and three survived him. In that case it was held that the five named children took as a class, and not as individuals, and that the whole residue was divisible among the three who survived the testator. The judge in delivering the opinion says: “Generally speaking, the cases with reference to a set or class of persons have been decided according to the terms which have been used. ... It is settled law thal a gift is not the less a gift to a class because you name a particular individual. . . . Including, in a general description, a certain person as a member of a class, where the testator treats that person as a member of that class, and naming him individually in the gift itself, does not make the gift less a gift to a class.”
In Drakeford v. Drakeford, 33 Beav. 43, where a testator bequeathed .his funded property to Ms widow for life, and afterwards to his brother for life, and then to be equally divided amongst his brother’s surviving legitimate children “ and my niece R. W.,” it was held, that the survivorship had reference to the death of the brother only, and that this was not a gift to a class, because a class must be ascertained at one and the same time.
In the case ol In re Chaplin’s Trust, 12 Weekly Rep. 147, the gift was of a residue equally between “ all and every the children of my late cousins A. and B., as shall be living at the time of my decease, C. D. E. and F.,” the named persons being cousins of the testator. C. having died in the testator’s lifetime, it was held that C.’s share lapsed. In that case it wrns said by Wood, Vice-Chancellor, “A gift to a class was a gift to a set of persons, all filling one common character, or holding some definite position, and a gift to a number of residuary legatees did not thereby constitute them a class.”
In the case of Wilson v. Atter, 44 L. T. N. S. 240, where there was a gift in a will equally among all the *133 children of R. W. the child of W. W. and L. his wife, and A. W., share and share alike, the case of In re Chaplin’s Trust was followed, and it was held, not a gift to a class and the child of W. W. and L., his wife, having pre-deceased the testator, his share lapsed. In re Featherstone’s Trusts, L. R., 22 Ch. Div. 111, 118 ; Shaw v. McMahon ; Clark v. Philips ; In re Stanhope’s Trusts; Drakeford v. Drakeford: Aspinall v. Duckworth ; In re Chaplin’s Trust; and Wilson v. Atter {above), were referred to, and said to be somewhat in conflict. The court also said : “From the last two cases it would seem that in order to constitute a named person a member of a class, he must have a common character with the unnamed members of the class. But that case was decided upon other grounds, and the share of the deceased legatee was held to have passed to the survivors. Hence, it is not an authority upon the question under consideration.
In Sheirs v. Ashworth {above), the case of In re Chaplin’s Trust is referred to, and the judge says: “ Sir William Page Wood in In re Chaplin’s Trust in sub-, stance referred to a class by what may be called the more or less scientific definition, that is to say, not the definition which is usually adopted in the cases at law upon the subjectIn 1 Jarm. on Wills, 269, note N, the case of In re Chaplin’s Trust is also referred to, and it is there said “It was admitted by Wood, Y. C., that naming some of a class did not make it less a class, yet he held that the named person having died before the testator Ms share lapsed, which seems contradictory.”
The authorities cited are all that have come to my notice which bear upon this question. It seems to me that the great weight of authority is to the effect that where there is a devise or bequest to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal *134 proportions, the share of each being dependent upon the ultimate number, it is a gift to a class; and that the distinction between the term class, when used in its popular sense, and when used in its legal sense, as pointed out in Jarman on Wills, clearly exists, and is sustained by the authorities cited. It is true, the cases of In re Chaplin’s Trust, and Wilson v. Atter {above), are to the contrary ; but as was said by Chitty, Justice, in Sheirs v. Ashworth {above), those cases refer “ to a class by what may be called the more or less scientific definition, and not the definition which is usually adopted in cases at law upon that subject,” and the other cases cited hold the opposite doctrine quite clearly. If the rule is as above stated, then surely the gift under consideration was to a class. In this case the gift was of the residue. It was to the children of Norman Phelps, to the children of John C. Phelps, and to Horace Phelps, to be divided between Horace Phelps and,each of said children, share and share alike. Here was a body of persons uncertain in number. The number was liable to be increased by births, or diminished by death. It was to ’be ascertained in the future. They were all to take at the same time. They were to take in equal proportions. The share of each was dependent for its amount upon the ultimate number of persons who should be living when the same was to be divided. I am, therefore, of the opinion that the devise and bequest to the residuary legatees, contained in the fifth clause of this will was a gift to such residuary legatees as a class, and that the devise and legacy to Horace Phelps did not lapse by his predecease, but that the share which would have been taken by him had he survived- the testator, belonged to the children of Norman Phelps and the children of John G. Phelps. This determination is, I think, also in accord with the intent' of the testator, as shown by *135 his will and the circumstances attending it. The testator, after giving several general legacies, provides for his wife. Having none other, he then selects from a large number of collateral relatives, many of whom were persons of great wealth, one cousin, and the children of two others, and grouping them together makes them his residuary legatees, provides that each should share alike, well knowing that the class ot group thus created was subject both to increase and diminution. He also knew of the death of Horace, was there when his death occurred, but made no change in his will. Presumably he did not intend to die intestate as to any portion of his property. He had made this group of persons his residuary legatees, and everything surrounding the will and the acts of the testator show quite clearly, I think, that he intended that the residue of his estate should go to the residuary legatees surviving him, and that he did not in\ tend to die intestate as to the share which was intended for Horace (Hoppoch v. Tucker, 59 N. Y. 202 ; Page v. Gilbert, 32 Hun, 301). It must, therefore, be held, that the share of the testator’s residuary estate which Horace Phelps would have taken had he survived the testator, vested in the children of Norman Phelps'and the children of John C. Phelps on the death of the testator, and did not pass to the testator’s heirs and next of kin as property undisposed of by the will.
If I am correct in the determination of this first question, then it becomes unnecessary to determine either the second or third questions presented, as both of those questions were based upon the supposition that it might be held that the share given to Horace Phelps passed to the testator’s heirs and next of kin as property undisposed of by the will.
This brings us to a question whether the children of Norman and John 0. Phelps take an equal share in *136 the residuary estate, or whether the three children of Norman take one half, and the five children of John C., the other ? I am of the opinion that these children each take an equal share ; that each is entitled to an equal undivided one-eighth part of the residuary estate of the testator. I think this follows from their taking as a class. Moreover, the language of the testator is very explicit. Each member of this class, is, by the express words of the will, to receive an .equal share of such residue. The language of the will is : “Such remaining estate and property to be divided between said Horace Phelps and each of said children, share and share alike.” It is difficult for me to conceive how the testator could have expressed his intention to divide his estate equally among these residuary legatees and devisees in clearer or more explicit terms. There is nothing indicating that he intended that one-third should go to Horace, one-third to the children of Norman, and one-third to the children of John C. On the contrary, as we have seen, each was to have an equal share. The authorities are to the same effect. “ Where a gift is to the children of several persons, whether it be to the children of A. and B., or to the children of A. and the children of B., they take per capita, not per stirpes. The same rule applies where a devise or bequest is made to a person and the children of another person, or to a person described as standing in a certain relation to the testator; and the children of another person standing in the same relation, as to my son A., and the children of my son B., in which case, A. only takes a share equal to that of one of the children of B., though it may be conjectured that the testator had a distribution according to the statute in his view” (2 Jarm. on Wills, 194, 195, and cases cited ; Stevenson v. Lesley, 70 N. Y. 512, 517; Collins v. Hoxie, 9 Paige, 81, 89 ; Lee v. Lee, 39 Barb. *137 172 ; In the matter of Verplanck, 91 N. Y. 439 ; Bunner v. Storm, 1 Sand. Ch. 357). These authorities seem, to me to be decisive of this question, and it must, I think, be held, that the children of Norman and John 0. Phelps take each an equal share in said residuary estate, and that each is entitled to one-eighth part thereof.
The only remaining question is, whether the plaintiff, as the sole surviving executor of the testator’s will, is invested with power to sell and convey real estate which belonged to the testator and distribute the avails among the residuary legatees.
■ The power given by this will to sell real estate was a general power in trust (Bussell v. Russell, 36 N. Y. 581). A power in trust ceases with the termination of the purpose for which it was given (Bruner v. Meigs, 64 N. Y. 506, 507,517). The statute is to the same effect (3 R. S. [7th ed.] 2183, 2191, §§ 67, 102). Hence, it becomes necessary to ascertain whether the power given by this will was a general one, to be executed for any purpose connected with the management or distribution of the testator’s estate, or whether it was given for some special purpose which has been accomplished or terminated. The testator, by his will, gave his executors “ full power to sell and convey any part or all of his real and personal property, and to reinvest the proceeds thereof in such manner as they might think to be for the best interest of his estate.”
It may be contended that this power was a limited one; that its purpose and object was to enable the executors to sell real estate for the purpose of reinvesting the proceeds to better advantage during the continuance of the life estate of the widow, so that if any of the testator’s real estate should become unremunerative, or any other emergency should arise, making it desirable, and for the best interest of the estate, to sell *138 such real estate and invest the proceeds in other property, it might be done by the executors. That such was one of the purposes of the testa tor in creating this power is, I think, quite obvious. But was the only purpose of this power to enable the executors to change the property and securities belonging to the estate, during,the continuance of the widow’s life estate ? I think not. It will be seen by an examination of the clause of the will creating this power, that the executors are given, first, an absolute and unlimited power to sell and convey any part or all of the testators’ real and personal property ; and, second, power to reinvest the proceeds thereof in such manner as they may think to be for the best interests of his estate. I cannot think that this latter provision limits the first. The first I>ower is, I think, independent of the second, and might have been executed by the executors during the lifetime of Mrs. Phelps, for any purpose connected with the management of the testator’s estate. To illustrate : suppose the personal property had been insufficient to pay the. testator’s debts : is there any doubt that the executors would have had the power, under this provision of the will, to have sold real estate for the payment of debts ? If not, then they would also have had the power to sell for any other purpose connected with the proper discharge of their duties as such executors. The plaintiff, as surviving executor, possessed the same rights as were possessed by both. But it may be said, that upon the death of the life tenant, the devisees became possessed of a vested title in the real estate of the testator, and hence, the power of sale was extinguished. It is true that they became vested with such title, but subject to the execution of this power, unless the power was a limited one, and the purpose was accomplished for which it was created. This power, I think, was a general one, and it may still be *139 executed by the plaintiff for any purpose necessary for the proper management and distribution of the testator’s estate.
From these considerations it follows that the plaintiff is entitled to judgment, adjudging that the share of the residuary estate which was given to Horace Phelps, vested in the surviving residuary legatees upon the testator’s death ; that the children of Norman and John C. Phelps each take one-eighth of said residuary estate ; and that the plaintiff, as surviving executor, is invested with power to sell the real estate of the testator for any purpose necessary for the proper management and distribution of the testator’s estate, with costs to all the parties, payable out of such residuary estate.*

In Koch’s Estate (N. Y. Surr. Ct. Feb. 1885) it was held, that under Code Civ. Pro. § 2748, providing that distributive shares, legacies, &c. not paid to the person entitled, within two years after decree, shall be paid to the county treasurer, the decree should not, direct such payment to the county treasurer when it is uncertain to whom the legacy or share belongs. Thus, where a residuary legacy was “ to my brothers and sisters now living, and the descendants of any deceased brothers or sisters,”—Held, not proper to direct payment to a sister who was not known to be living, nor known to have been living at the testator’s death ; but an inquiry must first be made as to when she died, and whether she left descendants surviving at testator’s death.
Decree for distribution.
The facts sufficiently appear in the opinion.
Rollins, S. It is provided by section 2748 of the Code of Civil Procedure that a decree for distribution of the assets of a decedent’s estate shall “direct the executor or administrator to pay to the county treasurer a legacy or distributive share which is not paid to the person entitled thereto at the expiration óf two years from the time when the decree is made, or when the legacy or distributive share is payable by the terms of the decree.
Though the direction for inserting this provision in decrees of distribution is ih terms one of universal application, such insertion is generally of no practical importance, and, in most cases, may with *140 propriety be omitted. Where, however, there are good grounds for doubting whether a person to whom a legacy or distributive share is ordered to be paid, will, within two years thereafter be within the reach of the executor or administrator so as to receive payment of his share in the funds of the estate, the procedure established by section 3748 may wisely be adopted.
The executor of this decedent suggests its adoption in the decree about to be entered in the case at bar. These are the facts:
The fourth clause in decedent’s will is in words following: “I give all the rest, residue and remainder of my estate unto my brothers and sisters now living, and the descendants of any deceased brothers or sisters.” Now, the decedent once had a sister named Anna K. Koch. Whether she is now living or dead, and whether she was alive when the testator died, or had predeceased him without leaving descendants her surviving, are questions whose answers are admittedly involved in doubt. It is manifestly improper, therefore, to enter such a decree as the executor proposes—viz., a decree directing payment to Anna K. Koch herself of the one-eleventh share to which decedent’s brothers and sisters are respectively entitled, and further directing the payment of that sum to the Chamberlain (as the County Treasurer of New York County), in the event that after two years shall have elapsed, said sum shall not have been already paid to Anna K. Koch. It is justly claimed by counsel for certain of the legatees that such a provision involves the unwarranted assumption that Anna K. Koch is the “person entitled ” to the legacy in question, whereas it may be ascertained upon inquiry that she died childless in the testator’s lifetime, and that her brothers and sisters who survived the testator, and the descendants of her brothers and sisters who did not, are themselves the “ persons entitled” to the share that would, under other circumstances, have been hers.
Before I direct any disposition of that share, therefore, an inquiry must be instituted into the circumstances that are supposed to justify the presumption of Anna K. Koch’s death, and the belief that she left no descendants who were living at the death of the testator. A reference will be ordered for taking proof upon these questions.