ANNIE ALETTA ELWELL MOFFETT, Plaintiff, *v.* MARY S. ELMENDORF, and Others, Respondents; ANNIE COE KING and Others, by JOSHUA M. VAN COTT, their Guardian ad Litem, and Others, Appellants.

*What determines the construction of a will — a codicil is a republication — when devisees take as tenants in common and when as a class — rights of the survivors.*

Whether a will should be construed as of the time of the execution of the same or as of the date of the death of the testator depends upon the peculiar circumstances of each particular case. The intention of the testator must determine the construction to be placed upon his will and must be gathered from the will itself, the court being aided in its construction thereof by the testator's situation at the time of the making of the will and at the time of his death.

The making of a codicil to a will is substantially a republication of the will.

The presumption is where a will directs land to be divided share and share alike, amongst individuals by name, that it was intended that the devisees should take as tenants in common and not as joint tenants, and the interests of those dying before the testator are deemed to have lapsed, but whenever a will clearly indicates that the devise is to a class, and was intended to benefit a particular class. and not the particular individuals of that class, the survivors of the class at the time of the death of the testator have the right to take the whole devise.

APPEAL by the defendants Annie Coe King and others, by Joshua M. Van Cott, their guardian *ad litem*, and by Harmanus B. Duryea and Pierrepont H. Duryea, from so much of an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 26th day of June, 1894, upon the report of a referee, as overrules their exceptions to the report of the referee named therein, and from so much thereof as confirms the said report of the said referee in respect to the matters so excepted to, and from so much thereof as adjudges that the defendants Annie Coe King, Edith King and Gertrude King are neither of them seized or possessed of, or entitled to, any share or interest whatever in the premises described in the complaint in this action, or any part thereof; and from so much thereof as adjudges that the defendant Kate Duryea is seized and possessed of two undivided one-eighth parts of the said premises.

Also an appeal by the defendant John D. Elwell from so much of the interlocutory judgment of the Supreme Court, entered herein on the 26th day of June, 1894, as overrules the exceptions taken by this defendant to the report made by the referee in this action, as confirms the said report, as adjudges that this defendant is entitled to only one-eighth share or interest in the premises described in the complaint in this action, and as adjudges that the defendant Kate Duryea is seized and possessed of two undivided one-eighth parts of the said premises.

*Joshua M. Van Cott, J. M. Bowers, James W. Gerard, Jr.*, and *Eustace Conway*, for the appellants.

*J. G. Flanders* and *Francis Lynde Stetson*, for the respondent Kate Duryea.

VAN BRUNT, P. J.:

In view of the conclusion at which I have arrived it will not be necessary to discuss some of the points which have been presented upon the part of the appellants. In the brief statement of facts, therefore, no mention is made of the particular circumstances under which such questions arise, and only such facts are stated as seem to be necessary to a comprehension of the points directly involved.

Samuel B. Duryea died in the city of Brooklyn on the 7th of

June, 1892, without issue, leaving him surviving a widow, and having duly made his last will and testament, dated June 18, 1877, and a codicil thereto, dated June 2, 1887, which were duly admitted to probate. The real estate sought to be partitioned in this action was devised, by the sixth clause of the will, to certain persons, two of whom died before the testator, and the first question presented is whether the shares which these two persons would have taken if living lapsed, or whether the devise was a devise to a class, those living at the death of the testator taking the whole. The next question is, if these shares did lapse did the same pass to the testator's widow under the second clause of the will, or to his heirs at law under the tenth clause?

For a solution of these questions it will be necessary to consider the whole of the testator's will and codicil, and gather from them the general intention of the testator, and then particularly consider the clauses of the will and codicil which seem to illustrate more pointedly such intention.

Considerable stress has been laid by the appellants upon what is called an error of the referee in the method pursued by him in determining the true construction to be placed upon the will in question. And it is urged that the referee erred in considering the will as speaking as of the death of the testator rather than as of the time when the will in question was made. And our attention is called to various adjudications upon this subject tending to show that in these particular cases the will was held to speak as of the date of its execution rather than as of the date of the death of the testator. But the question as to the rule of construction is one which must necessarily depend upon the peculiar circumstances of each particular case. It is the intention of the testator which is to determine the construction to be placed upon the will; and in reaching a conclusion as to what such intention was, adjudicated cases in respect to other wills afford but little aid, because no two wills are alike. It has become almost a maxim of the law that no will has a brother. The language used in each is different; the situation of the testator is different, and the ends to be accomplished are different. Therefore, the intention of a testator must be gathered from the will itself, the court being aided in its construction by his situation at the making of the will and at his death. In the case at

bar, in order to arrive at the intention of the testator, it is necessary to consider not only the will, but also the codicil which the testator made to said will some ten years after its execution. It is a familiar principle of law that the making of a codicil is substantially the republication of the will. And this rule is invoked upon the part of some of the appellants for the purpose of showing that the testator did not intend that the legacies in question should lapse.

Having these general rules in view, and having in mind the fact that the testator did not intend to die intestate, we shall proceed to consider the particular clauses of the will which form the subject-matter of this controversy.

As already stated, the testator left a widow, but no issue, and, therefore, only collateral relatives.

The first clause of the will is as follows:

"*First.* I give to my beloved wife, Kate Duryea, all my personal property and estate not herein otherwise bequeathed, unless in the contingency of my surviving her, or of her and my decease on the same day, or by occasion of the same wreck or casualty proving fatal to both, and in that case I bequeath said personal estate to my next of kin. The provisions of this will in favor of my wife are made by me, and are to be accepted by her, in lieu of all claims of dower in my real estate, or any portion thereof."

The second clause is as follows:

"*Second.* All my real estate, except the portions thereof hereinafter otherwise given or disposed of, I give, in like manner, to my said wife, if I leave no issue, but if I leave any children living or after born, or the descendants of any deceased child, I give the real property in this clause devised to my wife and such issue in equal shares, that is, each child, the representatives of each deceased child, as a class, and my wife, are severally and respectively to take equal shares therein."

By the third, fourth and fifth clauses he makes certain disposition of the remainders in real estate.

The sixth clause, which is the clause under which the question as to the lapsed legacies arises, is as follows:

"*Sixth.* I give and devise to my aunt, Catherine Elwell, and my cousins, Mary S. Elmendorf, John D. Elwell, Joseph S. Elwell, Cor-

nelius A. Elwell, Annie E. Elwell, James H. Elwell and Sarah E. Elwell (each to take an equal share therein), my lots on the southerly side of Sixtieth street, between First avenue and Avenue A, in the city of New York; also my lots on the southerly side of Sixty-first street, between First avenue and Avenue A, in the city of New York; also my lots and premises now or heretofore known as No. 276 Mott street, in the city of New York; and also my house and lot now or heretofore known as No. 143 Mercer street, in the city of New York."

By the eighth clause of the will he gave to the Brooklyn Children's Aid Society of the city of Brooklyn a considerable amount of real estate. By the ninth clause he gave legacies to divers persons.

The tenth clause is as follows:

" *Tenth.* All the residue of my real estate (if any there prove to be) I give and devise to those who may be my heirs at law at the time of my decease, and in the same proportion in which they would have taken if as to such residue I should have died intestate."

This will, as already stated, was executed on the 18th of June, 1877. On the 2d of June, 1887, the testator made a codicil to his will by which he revoked the fifth item or section of his will in relation to the Brooklyn Children's Aid Society of the city of Brooklyn, New York, by which also he requested his wife to pay so long as she lived $500 annually to the " Tree Planting and Fountain Society of the city of Brooklyn;" by which also he bequeathed to the Long Island Historical Society his library and manuscripts; and then made some directions in regard to the burial of his remains and provision for the keeping of the burial plot in order.

Catherine Elwell and Cornelius Elwell, two of the devisees named in the sixth clause of the will, died before the testator; and the first question is, did their share in the devise lapse, or was the devise to a class, the survivors taking the whole? In support of the contention that the survivors took the whole, our attention is called to the cases of *Hoppock* v. *Tucker* (59 N. Y. 204); *Manier* v. *Phelps* (15 Abb. N. C. 127); *Clark* v. *Lynch* (46 Barb. 69); *Magaw* v. *Field* (48 N. Y. 668); *Page* v. *Gilbert* (32 Hun, 303); *In Matter of Seebeck* (63 Hun, 179), and *Ferrer* v. *Pyne* (81 N. Y. 285). These cases, however, all depend upon the particular language which was there being construed, and establish no general rule which is to

control. It is to be observed that the presumption is, where a will directs an aggregate fund to be divided, share and share alike, amongst individuals by name, that it was intended that the devisees or legatees should take as tenants in common, and not as joint tenants; and, hence, that the interests of those dying before the testator are deemed to have lapsed. This was the rule laid down in the case of *Savage* v. *Burnham* (17 N. Y. 561), and it has not been departed from. Wherever the will clearly indicates that the devise is to a class, and was intended to benefit a particular class and not the particular individuals of that class, the right of the survivors to take the whole has been maintained. In the case at bar, there are no words of class used, except that the testator speaks of the devisees as his aunt and cousins. But these words were undoubtedly used merely to designate the persons. If others of the same name existed, they could not claim because they were not of the relationship named in the will. It was simply for the purpose of definiteness in designation that these words of relationship were used. The devise is to his aunt (naming her) and to his cousins (naming them), an equal share of the property devised being given to each. Here, clearly, there was no intention to designate the devisees as a class.

It is urged that one of the devisees named in this will died in December, 1877, and in 1887 the testator made a codicil apparently principally for the purpose of revoking one of the provisions contained in the will, and no mention is made of the lapsing of any of the legacies therein contained; and it is contended that, if the testator had supposed that the legacy to Catherine Elwell had lapsed, he undoubtedly would have made some other disposition of her share of the estate. The force of this argument, however, we do not perceive, because the testator, having made the provision for the Elwells which he desired to make, and having made a disposition of the balance of the estate, whatever it might prove to be, evidently, when one of these legatees died, saw no reason for a change in his will, or the making of a different disposition, the lapsed portion of his estate going under his will as the testator had provided. This view is emphasized by the fact that, although in the codicil he revokes a gift of a large amount of real estate to the Brooklyn Children's Aid Society, he makes no disposition except that which is generally made by his will of such portion of his estate. As already stated,

FIRST DEPARTMENT, DECEMBER TERM, 1894.　　[Vol. 82.

it is manifest that the testator did not intend to die intestate; and he knew when he revoked this legacy that he had made a provision in his will for the disposition of whatever should not pass under these specific devises of his will, and with that disposition he was satisfied. Hence, he simply revoked the legacy, allowing the subject-matter thereon to pass under the general provisions of his will.

This brings us to the consideration of the other question involved, namely: Under the provisions of the will, does the wife take the legacies which have lapsed, or do they go under the tenth clause to the heirs at law of the testator? It seems to me, when we consider the intent of the testator as disclosed by all the provisions of his will and codicil, that the conclusion must be arrived at that the tenth clause was not intended by the testator to be a general residuary clause except in the event of the death of his wife during his lifetime under such circumstances that he could not recast his will, and that he intended that all his real estate which did not pass by his will should go to his wife unless he had issue. And in arriving at this conclusion I have been very much influenced by the provisions of the first clause of his will disposing of his personal estate not therein otherwise bequeathed. It must be conceded that if any of the pecuniary legacies lapsed, they were covered by this first clause and would have gone to the widow unless the contingencies therein mentioned prevented such devolution, amongst which was the death of the wife during the lifetime of the husband, and by this clause the testator bequeathed his residuary personal estate in case of the happening of these contingencies to his next of kin. Here we have in respect to the personal estate the scheme of a bequest of specific legacies to persons named and a bequest of the balance of the personal estate to his wife, if living, and if she should die before him, to his next of kin. Then when the testator comes to deal with his real estate he uses the following language: "All my real estate, except the portions thereof hereinafter otherwise given or disposed of, I give, in like manner, to my said wife if I leave no issue."

What did the testator mean by giving his real estate "in like manner?" Did he not mean that his wife should enjoy all the real estate which he left and which was not disposed of by his will, provided she survived him? Of course, if she died in his lifetime the

gift would necessarily lapse. If she was living he desired her to enjoy all the residue of his real estate precisely the same as he had provided that she should enjoy all the residue of his personal estate, and this was the "like manner" which the testator had in mind. He never could have intended by these informal words to have imported into the clause relating to the real estate the important words of contingency contained in the first clause relating to his personal estate. The will in question was carefully drawn, was intended to meet every contingency, and to dispose of each and every part of the testator's estate; and, in view of the disposition made in regard to the personalty, it is evident that he intended that all parts of his estate undisposed of by his will should be enjoyed by his wife as above stated. In respect to the real estate he provides differently for the case of the death of his wife, he surviving and not having made any alterations in his will consequent upon this changed state of affairs. If he left children, under the provisions of his will the children were to equally enjoy his estate, even though the provision made for his wife in case of the leaving of children should have lapsed, because, if the testator had died leaving children him surviving, his wife being dead, the provision that his wife should share equally with the children would lapse, and the testator would have died intestate as to the share of the wife, were it not for the tenth clause of the will. And it is evident that he intended to provide for these contingencies of the death of his wife during his life, he dying without issue, and having been unable to make any change in his will, and of his wife having died in his lifetime, and he dying leaving children, and having made no other disposition of his estate than that contained in his will. In either case the share of the wife would lapse and pass by the tenth clause; and it was this contingency which the tenth clause was intended to meet. This view is further reinforced by the action of the testator in reference to the provisions contained in the eighth clause for the Brooklyn Children's Aid Society. By his codicil he revokes this provision, and says nothing in regard to what shall be the disposition of the property devised by the will for this society, but leaves it to be disposed of under his will. It was clearly the intention of the testator that his wife should enjoy that part of his estate which he did not otherwise devise by his will. This he

First Department, December Term, 1894.　　[Vol. 82.

declared when he executed this codicil by the republication of the will which the law presumes. He revoked the legacy to the Children's Aid Society ; and, the will and codicil being read together, it was as though the eighth clause had never existed, and, hence, that the property therein mentioned became a portion not disposed of by the will which went to the wife. So it was with these legacies which lapsed. They were not disposed of by the will to the testator's knowledge. In view of this construction placed upon this provision for the wife by the testator himself, can it be said that he intended that any portion of this estate should go under this tenth clause, his wife living at his death ? It seems to me, when we take the whole will together and consider all its terms and provisions, and the construction of his will by the testator evidenced by his codicil, we must come to the conclusion that he intended his wife to be the residuary legatee, and that the tenth clause should have operative effect only in case of the death of his wife during the testator's lifetime, he not having had any opportunity to make any change in the testamentary disposition of his property ; thus placing his real estate in precisely the same position as his personal estate in this respect, because that is the disposition which he has unequivocally made of his personal estate.

The judgment should be affirmed, with costs to the various parties to be paid out of the estate.

Follett and Parker, JJ., concurred.

Judgment affirmed, with costs to the various parties to be paid out of the fund.